435 P.2d 73

The ARIZONA BANK, Appellant,

v.

Bob M. MORRIS, Appellee.

No. I CA–CIV 167.

Court of Appeals of Arizona.
Division 1.
Dec. 18, 1967.
Opinion Modified Jan. 22, 1968.
See 7 Ariz.App. 107, 436 P.2d 499.

Ryley, Carlock & Ralston, by Joseph P. Ralston, Phoenix, for appellant.

Rolle, Jones & Miller, Yuma and Shimmel, Hill, Kleindienst & Bishop, by James B. Rolle, III, Phoenix, for appellee.

Brown, Vlassis & Bain, by Paul F. Eckstein and George E. Hilty, Phoenix, filed brief amicus curiae on behalf of American City Bank.

CHATWIN, Judge of the Superior Court.

This is an appeal from a summary judgment granted to the appellee, Bob M. Mor-

ris, in an action controverting an answer in garnishment filed by the appellant, The Arizona Bank. The writ of garnishment served upon the bank attempted to reach the beneficial interest of Paul Walter Heller in a trust established at The Arizona Bank by Paul Walter Heller for the benefit of himself, his wife and his children. The facts relevant to this appeal are as follows:

On December 15, 1958 Paul Walter Heller established an inter vivos trust at The Bank of Douglas, predecessor of The Arizona Bank of Phoenix, Arizona. The trust instrument provides that the trustee shall pay at least quarterly, all of the net income to Paul Walter Heller until August 25, 1970, or until his death, whichever shall first occur. It next provides that the trustee may pay to Paul Walter Heller as beneficiary, out of principal, such sum or sums as the trustee in its sole discretion shall deem advisable, or sufficient to meet any emergency, or to "provide adequately for the comfort, support, maintenance, welfare and medical care of the Beneficiary and his wife, Charlene Heller, or for the comfort, support, maintenance, welfare and medical care of his descendents * * *".

The trust provided that if the beneficiary, Paul Walter Heller, lives until August 25, 1970, the trust shall be terminated and the trust distributed to him; however in the event of his death prior to that time the trust should be divided into two parts, one part to be entitled "Charlene Heller trust", and the other part to be divided into equal trusts in the name of each of his living descendents per stirpes and not per capita.

On October 9, 1963 appellee obtained a judgment against Paul Walter Heller in the Superior Court of Yuma County in Cause No. 21959. Thereafter, on April 23, 1964, a writ of garnishment against appellant was issued in this Cause by the Clerk of the Yuma County Superior Court and served upon The Arizona Bank. The writ commanded the garnishee to answer under oath, not only for what it was indebted to the defendant Heller, but also what effects of the defendant Heller it had in its possession.

The Arizona Bank in due course answered the writ of garnishment disclosing garnishee's indebtedness to the defendant Paul Walter Heller, and the defendant's indebtedness to garnishee, together with the existence of a trust from which the income was presently payable to Heller, and denying that it possessed any property of Heller except as set forth in its answer to the writ of garnishment. Thereafter plaintiff-appellee tendered issue contending, among other things, that the answer of garnishee was incorrect and insufficient in not disclosing interest in the trust and praying judgment against the garnishee on such terms that the Court deemed proper after full disclosure had been made. The garnishee answered the tender of issue denying that any further disclosure relevant to the trust was necessary, and contending that plaintiff's tender of issue did not state a claim against it. Nevertheless, a copy of the trust agreement was later furnished to the plaintiff. According to its terms the major asset of the trust—shares of stock of Walter E. Heller & Company—cannot be sold by the trustee without the prior written consent of Paul W. Heller.

Pursuant to a motion for summary judgment by appellee, a hearing thereon and consideration of the exhibits and the record below, the trial judge granted the motion for summary judgment against the garnishee defendant, appellant herein. This appeal followed.

The real question presented for consideration on this appeal is, Can a person secrete and insulate his property from his creditors by temporarily placing that property in what he styles as a "spendthrift trust" while the income and, to the extent required or approved by the trustee, the corpus of the trust must remain unconditionally payable to him? And the further question, Is garnishment a proper method by which a judgment creditor may reach the interest of Paul W. Heller as the beneficiary of the Paul W. Heller trust?

This case presents several issues which are matters of first impression in the State

of Arizona. However, it appears that these questions have been presented and decided by numerous courts in other jurisdictions. The type of trust created by Heller has frequently been struck down, being characterized in fact as a fraudulent conveyance.

Appellant urges that the Paul Walter Heller trust is really an irrevocable, discretionary trust over which Heller as settlor has given up all interest and control. With this we cannot agree. It is Heller, not the trustee, who determines when the major trust assets—the stock of Walter E. Heller & Company—is to be sold. Furthermore, it is Heller who seems to determine when an emergency arises to create a situation wherein the corpus of the trust may be invaded. On July 21, 1964 Heller asked for and immediately received $142,500 to cover personal debts, including tax obligations to the federal government.

Throughout appellant's argument it is urged that the garnishment is not the proper proceedings but that the interest of the beneficiary in the trust can be attached only by an equitable proceedings such as a creditor's bill.

This Court is persuaded that a person cannot secrete and insulate his property from his creditors by temporarily placing that property in what he styles a "spendthrift trust" while the income and corpus of the trust remain payable to him.

The only spendthrift trust created by statute in Arizona is the one pursuant to A.R.S. § 14–104 which provides in part as follows:

"Spendthrift trust; creation; termination

"A. When a person apprehends that his estate will be squandered if left to the management or control of his child because of such child's idleness, dissipation or extravagance, the person may by his will leave his estate to a trustee appointed by will with full power of management and control, the income or increase of which shall be paid to the child for his maintenance and support after deducting expenses of management.

*   *   *   *   *   *

"C. If the child entitled to the estate or any part thereof, shall, at any time, make it appear to the satisfaction of the court that the cause for leaving the estate in trust no longer exists and that there is no danger of it being squandered by idleness, dissipation or extravagance, the court shall dissolve the trust, and place the estate in possession of the person who would have been entitled to it had the trust not been created."

It should be noted that a trust created pursuant to the provisions of this statute is not made by the settlor for his own benefit.

The Court's attention is invited to the Connecticut provisions for spendthrift trusts which is similar to that of Arizona. Connecticut General Statute § 52–321 (1958) contains a provision which was first enacted in 1899. It states:

"Whenever property has been given to trustees to pay over the income to any person, without provision for accumulation or express authorization to the trustees to withhold such income, and the income has not been expressly given for the support of the beneficiary or his family, such income shall be liable in equity to the claims of all creditors of such beneficiary.
*   *   *"

In interpreting the precursor of this section, the Supreme Court of Errors of Connecticut held that an attempted spendthrift trust of a life estate by testatrix in favor of her husband where the trustee was not given discretion over the right to withhold, accumulate or distribute income was not in trust for "the support of the beneficiary husband or his family" and accordingly was subject to involuntary alienation. Carter v. Brownell, 95 Conn. 216, 111 A. 182 (1920). Thus, in Connecticut, unless a trust qualifies under the statute, it is not subject to the protection usually accorded a spendthrift trust. The Arizona statute should be given the same restrictive interpretation.

Many jurisdictions in the United States do not look upon these spendthrift trusts

with favor. For example, Judge Holtzoff in the recent case of Utley v. Graves, D.C., 258 F.Supp. 959 (1966), explained that:

"A spendthrift trust is an anomaly and an anachronism. There are many who consider it contrary to their notions of right and wrong that a person should be permitted to live on income that he does not earn and yet that is not subject to the claims of his creditors. It seems incongruous that he should be at liberty to incur pecuniary obligations, free of any duty to fulfill them. That a person should be able to live according to the standards to which he claims to be accustomed and at the same time repudiate any obligation to pay for anything that he purchases on credit, is manifestly inequitable and repugnant to the ideas of right and wrong. That persons who are sufficiently sophisticated and incredulous may decline to extend credit to him, and refuse to sell him anything or render him any service except for current payment in cash, is not an adequate answer. There are numerous small business concerns that are unable to maintain a complete credit department and ascertain the fact that a person, although seemingly affluent, is living on the income of a spendthrift trust." 258 F.Supp. at 960.

■ In the absence of any legislative direction to the contrary, this Court will limit the benefits of the spendthrift trust to that interest created pursuant to A.R.S. § 14–104.

■ It seems to be universally accepted that no person can temporarily place his property beyond the reach of his creditors while he continues to enjoy the income (or at least have the right to enjoy such income) of the corpus and be entitled to the whole of the corpus upon termination of the trust. 54 Am.Jur. Trusts, § 166 (1945), expresses this principle well:

"Public policy does not countenance devices by which one frees his own property from liability for his debts or restricts his power of alienation of it; and it is accordingly universally recognized that one cannot settle upon himself a spendthrift or other protective trust, or purchase such a trust from another, which will be effective to protect either the income or the corpus against the claims of his creditors, or to free it from his own power of alienation. The rule applies in respect of both present and future creditors and irrespective of any fraudulent intent in the settlement or purchase of a trust. * * *" 54 Am.Jur., Trusts § 166 (1945).

The restatement which is followed in Arizona where there is no authority to the contrary provides:

"(1) Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest." Restatement (Second), Trusts § 156(1) (1957)

To the same effect see Griswold, Spendthrift Trusts, Second Edition (1947) § 474; Scott on Trusts, Vol. II § 156 (2d ed. 1956); Bogert, Trusts and Trustees § 223 (2d ed. 1965); and the cases collected under Annotation, Validity of Spendthrift Trusts, 119 A.L.R. 19 (1939) and 34 A.L.R.2d 1335 (1954).

While the issues presented in this case are novel in Arizona, it was considered under the common law as early as 1487 in England under 3 Henry VII, Chapter 4, wherein the English statute provided that:

"All deeds of gift of goods and chattels, made or to be made in trust to the use of that person or persons that made the same deed of gift, be void and of none effect."

■ By virtue of A.R.S. § 1–201, the common law is adopted in this jurisdiction. The clear import of 3 Hen. VII, Ch. 4, is that any trust settled for the benefit of the settlor is invalid notwithstanding the lack of fraudulent intent on the part of the settlor. It is equally clear that under A.R.S. § 1–201, 3 Hen. VII, Ch. 4 is part of the adopted common law of this state, and as such, it is further reason why the decision below should be upheld.

The final question raised by appellant is whether or not garnishment is a proper method to reach the corpus of the trust. Appellant Arizona Bank contends that the only proper way to reach the trust funds is through a proceedings in equity.

A.R.S. § 12–1584 allows garnishment of all property of the defendants in the possession of the garnishee. By this opinion we have stated that the funds in the possession of the appellant did not constitute a trust res and were susceptible to creditors' claims, therefore the so-called trust is not an equitable interest insofar as Heller's creditors are concerned. The remedy used was proper under the circumstances.

Judgment affirmed.

DONOFRIO, Acting C. J., and STEVENS, J., concur.

NOTE: Chief Judge JAMES DUKE CAMERON having requested that he be relieved from consideration of this matter, Judge KENNETH C. CHATWIN was called to sit in his stead and participate in the determination of this decision.