Claude PITRAT, Trustee, Kendrick M. Mercer, P.C., and First Interstate Leasing Service Corporation, Movants–Appellees,

v.

Ronald S. GARLIKOV and Reda S. Garlikov, Respondents–Appellants.

Stanley W. FOGLER, Trustee, First Interstate Leasing Service Corp., and Kendrick M. Mercer, Movants–Appellees,

v.

Richard James FLINDALL, Respondent–Appellant.

No. 90–15252.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 16, 1991.

Decided Oct. 25, 1991.

---

Carolyn J. Johnsen and Joseph A. Schenk, Herbert, Schenk, Johnsen & Dake, Phoenix, Ariz., for respondents-appellants.

John Friedeman, Phoenix, Ariz., for movant-appellee Pitrat.

Charles W. Lowe, Davis & Lowe, Phoenix, Ariz., for movant-appellee Fogler.

Before CHOY and SNEED, Circuit Judges, and KELLEHER, District Judge.*

* The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District

CHOY, Circuit Judge:

In this opinion we analyze federal statutes, Arizona statutes, and Arizona common law to determine the protection afforded pension plans in two Chapter 7 bankruptcy cases.

## I. Factual and Procedural Background

Ronald S. Garlikov and James Flindall filed voluntary petitions for bankruptcy protection under Chapter 7 of the bankruptcy code on April 29, 1988. Reda S. Garlikov filed a similar petition on June 1, 1988. Ronald and Reda Garlikov (Garlikov) are husband and wife. Their cases were consolidated for joint administration.

Garlikov and Flindall (the Bankrupts) claimed that their interests in certain pension plans were either exempt from the claims of their creditors or excludable from their bankruptcy estates. Garlikov's interest in these plans was about $1,200,000. Flindall's interest in these plans was about $1,800,000. Claude Pitrat, as the bankruptcy trustee for Garlikov, and Stanley Fogler, as the bankruptcy trustee for Flindall (trustees), objected to the Bankrupts' claims of exemption and exclusion. The bankruptcy court consolidated the Bankrupts' cases for the limited purpose of determining the status of their pension plans.

The bankruptcy court found that the plans were subject to the claims of the Bankrupts' creditors and as a result entered partial summary judgment in favor of the trustee in Garlikov's case, and summary judgment in favor of the trustee in Flindall's case. The district court also consolidated the Bankrupts' cases for the limited purpose of considering the bankruptcy court's pension ruling and summarily affirmed the bankruptcy court's decision.

We affirm in part and vacate and remand in part.

## II. Standard of Review

We review a grant of summary judgment de novo to determine whether,

of California, sitting by designation.

viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the trial court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

### III. Discussion

The commencement of a Chapter 7 bankruptcy case creates an estate. Virtually all of a debtor's property becomes the property of the estate and thus subject to the claims of the debtor's creditors. 11 U.S.C. § 541. Two sections of the Bankruptcy Code, 11 U.S.C. § 522 and 11 U.S.C. § 541(c)(2), allow a debtor to retain assets which would otherwise be subject to his creditors' claims. Section 522 does this by exempting certain property from the bankruptcy estate which has entered the estate,[1] and section 541(c)(2) accomplishes this by excluding certain property from the estate—the property never enters the estate.[2] *Goff v. Taylor*, 706 F.2d 574, 579 (5th Cir.1983).

### A. Exclusion Pursuant to Section 541(c)(2).

#### 1. ERISA as Applicable Nonbankruptcy Law.

■ The Bankrupts, relying on 11 U.S.C. § 541(c)(2), claim that their interests in their pension plans are excludable from the property of their bankruptcy estates. They argue that the anti-alienation and anti-assignment provisions of 29 U.S.C.

§ 1056(d)(1) (Employee Retirement Income Security Act (ERISA)) and 26 U.S.C. § 401(a)(13) (Internal Revenue Code (I.R.C.)), which are incorporated into their respective pension plans,[3] are transfer restrictions enforceable under "applicable nonbankruptcy law," as that term is used in section 541(c)(2) and thus enforceable against the bankruptcy trustee. The Bankrupts claim that these transfer restrictions prevent their plans from being included in the bankruptcy estate. *See Forbes v. Lucas (In re Lucas)*, 924 F.2d 597 (6th Cir. 1991) (ERISA anti-alienation provisions enforceable against bankruptcy trustee); *John Hancock Mutual Life Insur. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1169 (9th Cir.1990) (Fletcher, J., concurring) (same); *Anderson v. Raine (In re Moore)*, 907 F.2d 1476 (4th Cir.1990) (same).

In *Daniel v. Security Pac. Nat'l Bank (In re Daniel)*, 771 F.2d 1352, 1360 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986), a panel of this court held:

[T]he phrase *'applicable non-bankruptcy law'* in 11 U.S.C. § 541(c)(2) was intended to be a narrow reference to *state* 'spendthrift trust' law and not a broad reference to *all* other laws, including ERISA and IRC, which prohibit alienation. Therefore, the ERISA and IRC anti-alienation provisions in debtor[']s pension and profit sharing plan does [sic] not create a Federal non-bankruptcy exclusion under 11 U.S.C. § 541(c)(2).

---

**1.** 11 U.S.C. § 522(b) provides in relevant part:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection....

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law....

This statute allows a debtor to choose to exempt from the property of the estate either certain property enumerated in the bankruptcy code, § 522(b)(1), or property exempt under

federal law other than the property enumerated in the bankruptcy code, and property exempt under state and local law, § 522(b)(2). However, § 522(b)(1) allows states to limit debtors to the exemptions available under § 522(b)(2). Arizona restricts debtors to exemptions available under § 522(b)(2). A.R.S. § 33–1133(B).

**2.** 11 U.S.C. § 541(c)(2) provides:

A restriction of the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

**3.** Garlikov and Flindall claim that their plans are ERISA-qualified and the bankruptcy court so found. The trustees do not ask us to overturn that finding.

The Bankrupts recognize that their argument requires reversal of *Daniel.* They direct us to several recent Supreme Court decisions which they argue suggest *Daniel* should be reversed. *See Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) (ERISA prohibitions against assignment and alienation of pension benefits prohibit imposition of constructive trust); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (creditor in bankruptcy proceeding entitled to post-petition interest on nonconsensual over secured claim); *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (ERISA pre-empts state law which relates to ERISA-covered plans).

We have reviewed these decisions and are convinced that we are bound by *Daniel.* *Cf. Kincaid,* 917 F.2d at 1166 (no Supreme Court case contradicts *Daniel's* holding that ERISA trusts must look to state spendthrift law for protection in bankruptcy).

### 2. The Plans as Spendthrift Trusts.

The Bankrupts claim that the bankruptcy court erred in finding that their plans should be included in the property of their bankruptcy estates because the plans qualify as spendthrift trusts under Arizona law.[4] They claim that the bankruptcy court did not have sufficient facts before it to conclude that they were the settlors of their plans or that there were insufficient restrictions on their control over the plans. *See generally, Restatement (Second) of Trusts* §§ 153, 156 (1957).

The trustee in Garlikov's case claims that the following facts entitle him to summary judgment that Garlikov's plans were not spendthrift trusts under Arizona law.[5] Garlikov owns 100% of Ronald S. Garlikov,

Inc. (RSG), the settlor of the RSG, Inc. plan, in which Garlikov's interest is about $1,000,000. Dr. Garlikov is one of six participants in the plan. Dr. Garlikov is also a trustee of the plan and has taken loans totaling $50,000 from the plan. Dr. Garlikov owns 50% of Southwest Eye Surgeons, Ltd. (SES), the settlor of the SES, Ltd. plan, in which Garlikov's interest is $150,-000. Dr. Garlikov is a trustee of the plan and has the power to write checks on the plan.

The trustee in Flindall's case claims that the following facts entitle him to summary judgment that Flindall's plans were not spendthrift trusts under Arizona law. Flindall is the president and sole shareholder of Retinal Consultants of Arizona, Ltd. (RCA), the settlor of the RCA plan, in which Flindall's interest is about $100,000. Flindall is the sole trustee of the RCA plan and has taken a loan of $47,000 from the plan. Flindall is the president of and owns 50% of the stock of Southwest Retina Vitreous Consultants, Ltd., (SRVC), the settlor of the SRVC plan, in which Flindall's interest is about $1,200,000. Flindall is the sole trustee of the plan and has taken a loan of $47,000 from the plan. Flindall also loaned $280,000 from the plan to Garlikov. Flindall is the sole trustee of the Southwest Retinal Consultants, Ltd. plan, in which his interest is about $500,000. He has taken a loan of $47,000 from the plan.

The trustees did not include the documents which established the plans in their motions for summary judgment. Thus the record in this case does not indicate what the terms of the plans are.

### a) Applicable Law

The Bankrupts agree with the trustees that, at the time of their bankruptcies, Arizona had no spendthrift trust statute which applied to them.[6] The parties also agree

---

**4.** None of the parties claim that ERISA preempts Arizona spendthrift trust law. We express no opinion on this question.

**5.** Both Garlikov and Flindall claim that the evidence on which the trustees rely was not properly before the bankruptcy judge. In light of

the conclusions we reach, *infra,* resolution of this claim is not necessary.

**6.** The Bankrupts filed for bankruptcy protection in 1988. In 1990 Arizona enacted extensive spendthrift trust legislation codified at A.R.S. §§ 14–7701 to 14–7710. These statutes do not apply to the Bankrupts' cases. *Hall v. A.N.R.*

that Arizona courts will look to the Restatements of the Law where there is no authority to the contrary. *Litchfield v. Nolden (In re Fitzsimmons)*, 896 F.2d 373, 375 (9th Cir.1990).

### b) Analysis

■ Generally the assets of a debtor are reachable by his creditors. This rule is based on two principles. The first is an intuitive moral notion that persons should be required, when they have the funds, to pay their debts. The second is that it will be too costly for sellers to investigate all seemingly affluent buyers to see if their assets are protected against creditors. Thus the spendthrift trust is an anomaly. *Arizona Bank v. Morris*, 435 P.2d 73, 76, 6 Ariz.App. 566 (1967), *modified*, 436 P.2d 499, 7 Ariz.App. 107 (1968). The image of a wise and benevolent person seeking to provide for a foolish and impulsive loved one supersedes the values which generally require that creditors be able to have access to debtors' assets and allows for spendthrift trusts. *See e.g., Id.* 435 P.2d at 75 (discussing statutory spendthrift trust); *Allen v. Trust Co. of Georgia*, 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367 (1946) (spendthrift trust established for son and daughter who had attempted unsuccessful business ventures). However, this image of benevolent paternalism is absent when the settlor of the trust is also the beneficiary. Thus the traditional view has been that assets placed in an alleged spendthrift trust are not protected against the claims of a beneficiary's creditors if the beneficiary is also the settlor of the trust. *Arizona Bank v. Morris*, 435 P.2d 73, 76, 6 Ariz.App. 566 (1967), *modified*, 436 P.2d 499, 500, 7 Ariz.App. 107 (1968); *Restatement (Second) of Trusts* § 156 comment f

(1957). The common law position has been that the benefits of self-paternalism do not out weigh its costs.

■ The traditional rule against self-settled spendthrift trusts can not be circumvented by a beneficiary who is the settlor in fact though not in name. *Restatement (Second) of Trusts* § 156 comment f (1957). "If a person furnishes the consideration for the creation of a trust, he is the settlor." *Restatement (Second) of Trusts* § 156 comment f, reporter's notes (1959).

*John Hancock Mutual Life Insurance v. Watson (In re Kincaid)*, 917 F.2d 1162 (9th Cir.1990), modified the common law definition of what a self-settled trust is.[7] In *Kincaid*, a panel of this court held that Kincaid's ERISA qualified plan, set up by the insurance company which employed her, was a spendthrift trust and thus protected in bankruptcy. The panel found that Kincaid's voluntary, though binding, agreement to have deductions from her salary placed in the plan did not make the plan self-settled.[8] *Id.* at 1167. The panel then found that the Kincaid's "dominion and control" over the plan was not so great as to destroy its spendthrift nature. Specifically the panel found that the plan's provisions that Kincaid was entitled to distribution of her interest in the plan upon death, attainment of age 59½, disability, retirement, termination of employment, or termination of the plan did not destroy its spendthrift nature. *Id.* at 1167–68. In addition, Kincaid's ability to obtain funds from the plan pursuant to certain specified loan and hardship conditions did not destroy its spendthrift nature because such access was at the discretion on the administrator, not Kincaid. *Id.*

---

*Freight System*, 149 Ariz. 130, 717 P.2d 434, 444 (1986) (rights vest on commencement of legal proceedings and may not be retroactively affected by statute). Our decision in this case is not an interpretation of these statutes.

7. This case decided whether a particular retirement plan is a spendthrift trust under Oregon and Massachusetts law. Thus we are not technically bound by the *Kincaid* holding because we are deciding a question of Arizona law. However, *Kincaid* does not rely on any state law

inconsistent with Arizona law or the *Restatement (Second) of Trusts*. *Kincaid* is essentially a common law interpretation of spendthrift trust law as is our decision in this case. Therefore, for the sake of consistency within the circuit we follow *Kincaid*.

8. The trustee in *Kincaid* did not attempt to include matching funds contributed by Kincaid's employer in the bankruptcy estate. *Id.* at 1164.

■ Kincaid clearly provided the consideration for the creation of her interest in the plan, but the court held that the plan was not self-settled. Against this background the trustees ask this court to affirm the bankruptcy court's grant of summary judgment. After *Kincaid*, to affirm the bankruptcy court's decision with respect to *any* of the plans at issue we would have to find that an individual's dominion and control over a plan is not sufficiently limited for the plan to qualify as a spendthrift trust where the person is: 1) the major shareholder of a closely held corporation, 2) the president of the corporation, 3) the sole trustee of the ERISA-qualified plan established by the corporation, 4) a beneficiary of the plan, and 5) has borrowed from the plan.

The basic principle established by *Kincaid* is that a spendthrift trust truly designed to provide for an employee's security later in life is permissible. It is possible that a plan, even with these five characteristics, could sufficiently restrict the beneficiaries' access to the plan funds and the trustee's control over the plan, for it to accomplish this goal and qualify as a spendthrift trust.[9] Thus genuine issues of material fact exist concerning whether the Bankrupts' plans were spendthrift trusts under Arizona law.[10]

■ The terms of a plan must be more restrictive if it is to be effective as a spendthrift trust against the creditors of a beneficiary who is also a trustee than the terms must be with respect to a beneficiary who is not a trustee, as in *Kincaid*. Likewise, the control exercised over a plan by a corporation must be restricted more if it is to be effective as a spendthrift trust against the creditors of a beneficiary who is also the president and a major shareholder of the corporation, than the control must be with respect to a beneficiary who is not so

situated. We remand for further factual findings into the terms of the plans, which are not part of the record of these cases, and other relevant evidence to determine the dominion and control exercised by the Bankrupts over their respective plans.[11]

■ *Kincaid* modifies the definition of a self-settled trust in the context of discussing a trust designed to provide for an employee's security later in life. This modification creates the possibility that people will contribute to trusts so that they are able to engage in risky ventures while sheltering the bulk of their assets from creditors. *Kincaid* does not hold that such self-settled spendthrift trusts are enforceable against creditors, nor do we. *Kincaid* allows for self-paternalism, but only to provide for an employee's security later in life. Thus to the extent that contributions by an employee to a trust do not reasonably serve this goal, these contributions are not protected against creditors' claims by spendthrift trust provisions.

We vacate the bankruptcy court's summary judgment that the Bankrupts' pension plans were not spendthrift trusts under Arizona law and remand for additional factual findings consistent with this opinion.

*B.  Exemption Pursuant to Section 522.*

1. The Federal Law Exemption.

■ The Bankrupts claim that their interests in their pension plans are exempt from the property of their bankruptcy estates. They rely on 11 U.S.C. § 522(b)(2)(A) which exempts from the property of a bankruptcy estate property "exempt under Federal law." The Bankrupts argue that the anti-alienation and anti-assignment provisions of ERISA and the I.R.C., which are incorporated into their

---

9. The *Restatement (Second) of Trusts* § 152 comment m (1957), provides that a trust does not lose its spendthrift character where the sole trustee is one of a number of beneficiaries.

10. If we were to hold that these five factors alone disqualify a beneficiary from spendthrift trust protection of plan funds in bankruptcy, while granting persons such as Kincaid full pro-

tection, we would discriminate against small business owners.

11. The paucity of the factual record in this case limits our decision. We were told at oral argument that Flindall put $500,000 into a plan shortly before filing for bankruptcy. However, we find no evidence of this in the record.

respective pension plans, constitute "exemptions under Federal law."

The Bankrupts' argument requires *Daniel v. Security Pac. Nat'l Bank (In re Daniel)*, 771 F.2d 1352, 1360 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986), to be overruled. In *Daniel*, a panel of this court held "that the anti-alienation provisions of ERISA and the Internal Revenue Code do not create Federal non-bankruptcy exemptions for ERISA qualified plans under 11 U.S.C. § 522(b)(2)(A)." *Id.* at 1361. The Bankrupts once again direct the panel to recent Supreme Court decisions which they claim require *Daniel* to be overruled. *See Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) (ERISA prohibitions against assignment and alienation of pension benefits prohibit imposition of constructive trust); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (creditor in bankruptcy proceeding entitled to post-petition interest on nonconsensual over secured claim); *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (ERISA preempts state law which relates to ERISA-covered plans).

We have reviewed these cases and are convinced that we are still bound to follow *Daniel*.

2. The State or Local Law Exemption.

The Bankrupts claim that their interests in their pension plans are exempt from the property of their bankruptcy estates. They rely on 11 U.S.C. § 522(b)(2)(A) which exempts from the property of the bankruptcy estate property "exempt under ... State or local law." The Bankrupts direct us to Arizona Revised Statute (A.R.S.) § 33–1126(B) which states in relevant part:

> Any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan which is qualified under §§ 401(a), 403(a), 403(b), 408, or 409 of the United States internal revenue code of 1986, as amended, shall be exempt from any and all claims of creditors of the beneficiary or participant.

The trustees do not dispute the Bankrupts's claim that their plans are covered by this Arizona statute. However the trustees claim that the Arizona statute is pre-empted by ERISA. They rely on 29 U.S.C. § 1144(a) which provides "[ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." [12]

The Bankrupts do not dispute the trustees' claim that by naming sections of the I.R.C. which refer to ERISA qualified plans, the Arizona statute specifically refers to ERISA retirement plans. *See In re Komet*, 93 B.R. 498, 500 (Bktcy.W.D.Tex. 1988) (I.R.C. §§ 401(a), 403(a) and (b), 408, and 409 refer to ERISA-qualified plans), *vacated in part on reconsideration*, 104 B.R. 799 (1989). The Bankrupts argue that A.R.S. § 33–1126(B) is not pre-empted by ERISA because it is so tenuously connected with ERISA plans that it does not "relate to" the plans and because it does not conflict with ERISA.

---

12. The Bankrupts suggest for the first time on appeal that these pre-emption provisions do not apply to their plans because their plans are not described in section 1003(a). However, they do not present us with any factual basis for their claim.

Generally, the court of appeals will not consider arguments not raised in the district court. *Copeland v. Bowen*, 861 F.2d 536, 540 (9th Cir. 1988). However, it has the power and discretion to do so. *Wind Power Systems v. Cannon Financial Group*, 841 F.2d 288, 290 n. 1 (9th Cir.1988). Departure from the rule against

hearing arguments for the first time on appeal may be appropriate when 1) it is necessary to prevent a miscarriage of justice, 2) a new issue arises while appeal is pending because of a change in the law, or 3) the issue presented is one of law and further development of the factual record is not necessary. *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985). None of these traditional exceptions apply in this case. We decline to consider this incomplete argument raised for the first time on appeal.

### a) The Meaning of "Relate To"

The Bankrupts' contention that A.R.S. § 33–1126(B) does not "relate to" employee benefit plans covered by ERISA fails. The Supreme Court has repeatedly held that state laws which make reference to ERISA plans are laws that "relate to" those plans within the meaning of 29 U.S.C. § 1144(a). *Mackey v. Lanier Collection Agency & Service*, 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988). A.R.S. § 33–1126(B), by naming those sections of the I.R.C. which designate ERISA-qualified plans, clearly makes reference to ERISA plans. The Supreme Court has "virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are pre-empted under § 514(a) [11 U.S.C. § 1144(a)]." *Id.*

### b) Conflict as a Requirement for Pre-emption

However, the Bankrupts argue that this definition of "relate to" when examined in the factual contexts of the relevant Supreme Court cases, incorporates an implicit requirement that a state statute conflict with ERISA if it is to be pre-empted. *See e.g. Id.; Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (state employment law pre-empted by ERISA to extent it prohibits practices not prohibited by federal law). The claim that conflict with federal law is required for pre-emption is less than certain. *Mackey*, 486 U.S. at 829, 108 S.Ct. at 2185 (ERISA pre-empts state laws which are enacted to help effectuate its basic purpose and which are consistent with its substantive requirements). However, we need not address the Bankrupts' argument directly because the Arizona statute does conflict with ERISA.

The Bankrupts characterize the Arizona statute and ERISA as being in complete harmony. A.R.S. § 33–1126(B) provides that creditors cannot reach ERISA-qualified plans, and ERISA, 29 U.S.C. § 1056(d), provides that creditors cannot reach ERISA-qualified plans. They point out

that this situation is different from the other cases cited by the trustees in which the Supreme Court has considered ERISA pre-emption. *See Shaw*, 463 U.S. 85, 103 S.Ct. 2890; *Mackey*, 486 U.S. 825, 108 S.Ct. 2182. In these cases ERISA silence on an issue that state law speaks about has resulted in pre-emption. The silence of ERISA is significant. It is the "conflict" between ERISA's silence, the Bankrupts contend, and the state's pronouncement which is determinative. Here, in contrast, both ERISA and state law speak and say the same thing.

The question immediately arises "If ERISA and state law are truly the same, why does anybody care if state law is pre-empted?" The answer is that the bankruptcy code, at least arguably, gives different effects to the state law and ERISA. Under *Daniel*, ERISA's anti-alienation provisions do not protect a debtor in bankruptcy. *See supra* section III.B.1. However, arguably under the state law exemption of 11 U.S.C. § 522(b)(2)(A), A.R.S. § 33–1126(B) does protect a debtor in bankruptcy. Thus by operation of the bankruptcy code, the Arizona statute would accomplish a disposition of ERISA plan funds different from that accomplished by ERISA. ERISA and A.R.S. § 33–1126(B) conflict.[13] Indeed it seems almost axiomatic that when people argue about pre-emption there is some significant difference between the federal and state statutes.

A.R.S. § 33–1126(B) and ERISA conflict in another straight forward manner. A.R.S. § 33–1126(B)(2) removes "amounts contributed within 120 days before a debtor files for bankruptcy" from the general protection afforded ERISA-qualified plans in A.R.S. § 33–1126(B). The protection afforded by ERISA's anti-alienation statute, 29 U.S.C. § 1056(d), has no limitation of this type.

The Bankrupts's contention that A.R.S. § 33–1126(B) is not pre-empted by ERISA because there is no conflict between state and federal law fails.

---

**13.** What is unusual about this conflict is that it is created by the bankruptcy code's deference to state law. This issue is discussed in section III.B.2.(c) *infra.*

### c) ERISA's Saving Clause

The Bankrupts advance one final argument against pre-emption. They claim that the Arizona statute is saved from pre-emption because it is incorporated into the bankruptcy code. They direct the panel once again to 11 U.S.C. § 522(b) which exempts from creditors' claims in bankruptcy property exempt under state law. Next, they direct the panel to the "saving" provisions of ERISA.

> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law.

29 U.S.C. § 1144(d). Since the federal bankruptcy code allows for state exemptions and even allows states to require its domiciliaries to choose state law exemptions, the Bankrupts claim that pre-emption of the Arizona exemption statute would "impair" the federal bankruptcy code in violation of ERISA's "saving" clause.

The Supreme Court's decision in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), provides guidance in determining the effect of ERISA's saving clause. In *Shaw*, the Court addressed the pre-emptive effect of ERISA on a New York state antidiscrimination statute which "related to" ERISA. Shaw argued that the state statute was saved from pre-emption by Title VII of the Civil Rights Act of 1964 because pre-emption of the state statute would impair Title VII. *Id.* at 101, 103 S.Ct. at 2902.

Title VII expressly preserves nonconflicting state laws:

> Nothing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title.

42 U.S.C. § 2000e–7. In addition, Title VII requires a claimant to pursue available state administrative remedies.

When an employment practice prohibited by Title VII is alleged to have occurred in a State or locality which prohibits the practice and has established an agency to enforce that prohibition, the Equal Employment Opportunity Commission (EEOC) refers the charges to the state agency. The EEOC may not actively process the charges "before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated."

*Shaw*, 463 U.S. at 101–02, 103 S.Ct. at 2902, *quoting* 42 U.S.C. § 2000e–5(c). The EEOC in subsequent proceedings gives substantial weight to the state administrative decision. *Shaw*, 463 U.S. at 102, 103 S.Ct. at 2902.

The Court held that impairment of Title VII would occur if ERISA pre-empted those portions of the state statute which duplicated Title VII's provisions and provided for state administrative proceedings on these provisions. Thus Title VII saved these portions of the state statute from ERISA pre-emption. Title VII would be impaired because the joint state/federal enforcement scheme provided for in Title VII would be frustrated. The EEOC would be placed under a greater burden if cases were not sent first to a state agency. *Id.* at 102–03, 103 S.Ct. at 2902–03.

However, ERISA pre-empted those portions of the New York statute which prohibited practices not unlawful under Title VII. *Id.* The Court stated that Title VII "in no way depends on such [state law] extensions for its enforcement. Title VII would prohibit precisely the same employment practices, and be enforced in precisely the same manner, even if no State made additional employment practices unlawful. Quite simply, Title VII is neutral on the subject of all employment practices it does not prohibit." *Id.* at 103, 103 S.Ct. at 2903.

Careful comparison of the state law exemptions allowed by the bankruptcy code with both the state law provisions saved by Title VII and those state law provisions pre-empted by ERISA in *Shaw* is the first step in determining whether the bankrupt-

cy code would be impaired if Arizona's exemption for ERISA-qualified plans were pre-empted. The state law exemptions allowed by the bankruptcy code do not affirmatively aid the federal law by lessening the workload of any federal agency or court administering the federal law as did those portions of the state law saved by Title VII in *Shaw*. Thus the concerns about less effective enforcement of federal law if state law were pre-empted, which motivated the Court to save certain portions of New York's law, are not present here. *Compare Shaw*, 463 U.S. at 102–03 n. 23, 103 S.Ct. at 2903 n. 23 (pre-emption of parts of state law would create greater burden on EEOC resulting in less effective enforcement of Title VII). In this respect the state law exemptions allowed by the bankruptcy code are analogous to the parts of the New York law which *Shaw* held ERISA pre-empted.

Next we compare the bankruptcy code's allowance for state exemptions, 11 U.S.C. § 522(b), with Title VII's allowance for state legislation, 42 U.S.C. § 2000e–7. As the Supreme Court held in *Shaw*, the mere fact that the federal statute allows for state legislation does not mean that the federal statute will be impaired if state legislation is invalidated by pre-emption. *Id.* at 101 n. 22, 103 S.Ct. at 2902 n. 22. However, the bankruptcy code differs from Title VII in that the bankruptcy code enforces state law exemptions. Indeed it allows for states to provide that their exemptions will be exclusively enforced. Title VII just allows for state legislation, it does not promise to enforce it, much less enforce it exclusively. However, this difference does not lead us to the conclusion that the bankruptcy code would be impaired if Arizona's exemption for ERISA-qualified plans is pre-empted.

**14.** It is true that Title VII could also operate independently of any state law. However, those parts of the New York state law sustained in *Shaw* affirmatively aided in the enforcement of Title VII. This is not true of the Arizona state exemption. We note that this distinction creates a difference between laws that only provide for substantive regulation and those that couple substantive regulation with a procedure for enforcement.

The bankruptcy code, 11 U.S.C. § 522, provides certain federal exemptions for the debtor in bankruptcy. The bankruptcy code, as a whole, is set up to operate independently of any state action. The bankruptcy code would not be impaired if there were no state law exemptions at all for it to enforce. Thus since the bankruptcy code can operate in a perfectly effective manner without any state law, it is not impaired by the failure of a particular state exemption law.[14] *Cf. Hydrostorage v. Northern Cal. Boilermakers*, 891 F.2d 719 (9th Cir.1989) (no impairment of 29 U.S.C. § 50 and implementing regulations caused by ERISA pre-emption of state regulation as applied), *cert. denied*, —— U.S. ——, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990).

The bankruptcy code does not save A.R.S. § 33–1126(B) from pre-emption by ERISA.

## IV. Conclusion

We VACATE the bankruptcy court's summary judgment that the Bankrupts' pension plans were not spendthrift trusts and REMAND for further development of the factual record.

In all other respects we AFFIRM the bankruptcy court's grant of partial summary judgment against Garlikov and the bankruptcy court's grant of summary judgment against Flindall.

The parties shall bear their own costs in this appeal.

SNEED, Circuit Judge, dissenting:

Although I join in this court's reaffirmation of the reasoning in *Daniel v. Security Pac. Nat'l Bank (In re Daniel)*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986),[1]

**1.** In *Daniel*, a former version of California's exemption statute, Cal.Civ.Proc. § 690.18(d), was found not to exempt the ERISA-qualified plan then at issue. Thus, the *Daniel* court was not faced with the situation now before us, in which Arizona plainly means to exempt all ERISA-qualified plans. As the majority points out, A.R.S. § 33–1126(B) makes explicit reference to "§§ 401(a), 403(a), 403(b), 408 or 409 of

I respectfully dissent from that portion of the majority's opinion, *supra* Part III.B.2, finding that ERISA's preemption provision voids Arizona's exemption scheme.

The majority holds that ERISA of its own force preempts the Arizona exemption statute. Relying on the Supreme Court's decision in *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the majority finds that Arizona's exemption statute, by explicitly seeking to protect ERISA-qualified plans from creditors, not only "relates to" ERISA within the meaning of 29 U.S.C. § 1144(a) as interpreted in *Mackey*, but outwardly conflicts with ERISA as well.[2] In my opinion, this is an improper analysis in the bankruptcy context.

The Bankruptcy Code sets forth an exemption scheme by which a state either can allow its debtors to choose between the standard "laundry list" of federal exemptions or available state exemptions, or can force its debtors to take the state exemptions exclusively. In short, whether and to what extent a debtor will be able to exempt property from collection in the bankruptcy setting is a decision left, by federal congressional will, entirely to the states. A straightforward preemption analysis focusing solely on the force and effect of the ERISA preemption provision as it relates to a state exemption scheme ignores the Bankruptcy Code. Just as Congress is empowered to reserve for itself an area for exclusive regulation and control, as it has certainly done for pension and welfare benefit plans, it may also authorize states to exercise final authority without regard to other federal legislation. I believe this has been done in the Bankruptcy Code. The Supremacy Clause, I contend, can both permit or preclude the operation of state law either implicitly or explicitly.

In this case the permission is explicit. The legislative history supports this conclusion. It indicates that the federal exemptions were created to provide a readily available modern alternative to state exemption laws that were outdated at the time of the Bankruptcy Code's revision. *See In re Komet*, 104 B.R. 799, 812 (W.D.Tex.1989) (opinion on rehearing). Indeed, the federal exemptions explicitly create an exemption for ERISA-qualified pension plans from the bankruptcy estate.[3] In light of the purpose behind the federal "laundry list" alternative, it makes little sense to argue that a state is not empowered under the Bankruptcy Code to at least emulate portions of the model list in a reasonable fashion.

There are thirty-five so-called "opt out" states that have affirmatively chosen to limit their debtors to the state exemption scheme. There is as much reason to believe that Congress intended to permit states to exempt ERISA-qualified plans as there is to believe that Congress intended to give states the ability to enact unlimited homestead exemptions, exemptions for specified numbers of farm animals, or the like.

the United States internal revenue code of 1986." *Supra* at 426.

**2.** I do not think it necessary or appropriate to go into the question of the Arizona statute's viability in a nonbankruptcy context. I would, however, note that the majority may have inadvertently extended the Supreme Court's ERISA preemption analysis evidenced in *Mackey*. The majority writes: "The Supreme Court has *repeatedly* held that state laws which *make* reference to ERISA plans are laws that 'relate to' those plans within the meaning of 29 U.S.C. § 1144(a)." *Supra* at 427 (emphasis added). This is inaccurate. In fact, the Court for the first time uses the verb "make" in *Mackey*, and does so citing prior decisions using "have." The implication the majority draws from the altered verb is that simply "naming those sections of

the I.R.C. which designate ERISA-qualified plans" triggers preemption under § 1144(a). *See id.* While I express no opinion on whether the make/have distinction will prove meaningful, *cf. In re Volpe*, 100 B.R. 840, 848 (W.D.Tex. 1989), or whether the majority is correct in its interpretation of *Mackey* as it applies in a non-bankruptcy context, I would caution against any unwarranted extension of *Mackey* in the context of this case. Under the majority's own preemption rationale, there is no reason to go so far as to find that if any challenged statute "makes" an ERISA reference however banal, it is automatically preempted.

**3.** The Code provides for an ERISA-qualified plan exemption to the "extent reasonably necessary for the support of the debtor." 11 U.S.C. § 522(d)(10)(E).

The syllogism the majority employs to demonstrate its conflict-therefore-preemption analysis between ERISA and A.R.S. § 33–1126(B) precisely reveals the point I wish to make. It reads: "Under *Daniel*, ERISA's anti-alienation provisions do not protect a debtor in bankruptcy.... [U]nder the state law exemption of [the Bankruptcy Code], A.R.S. § 33–1126(B) does protect a debtor in bankruptcy. Thus by operation of the *bankruptcy code*, the Arizona statute would accomplish a disposition of ERISA plan funds different from that accomplished by ERISA." *Supra* at 14615 (emphasis added). In my view, it is the "operation" of the Bankruptcy Code that should control.

I acknowledge that *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), presents a difficult problem. *Shaw* dealt with the relationship between the New York Human Rights Law, Title VII, and ERISA's preemption and savings clauses, 29 U.S.C. §§ 1144(a), (d). Sundry providers of welfare plans claimed that ERISA's preemption clause, § 1144(a), superseded the New York law, which was "a comprehensive antidiscrimination statute, prohibiting, among other practices, employment discrimination on the basis of sex." *Shaw*, 463 U.S. at 88, 103 S.Ct. at 2895. Under New York interpretation, pregnancy discrimination was sex discrimination. *See Brooklyn Union Gas Co. v. New York State Human Rights Appeal Bd.*, 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393 (1976). This went beyond Title VII as then interpreted by the Court, which, in *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), had found Title VII's prohibition against sex discrimination not to cover pregnancy.[4] Thus the plan providers argued that the New York Human Rights Law affected the administration of their welfare plans by requiring protections that ERISA did not. Because the New York law "related" to ERISA within the meaning of § 1144(a) it should be preempted, they argued.

Supporters of the New York Human Rights Law countered that ERISA's savings clause, § 1144(d), should be interpreted to stave off preemption. They reasoned that because Title VII—in sharp contrast to ERISA's strict preemptive posture—"expressly preserves nonconflicting state laws," preemption of the New York law "would impair and modify Title VII because it would change the means by which it is enforced." *Shaw*, 463 U.S. at 101, 103 S.Ct. at 2902. Thus, the clash was between one federal law (Title VII) that was meant *not* to preempt related state laws and another (ERISA) that was. The latter, however, contained a savings provision pledging not to "impair" or "modify" other federal legislation.

The Court pointed out that Title VII would not be "impaired" or "modified" should ERISA preempt the New York law regarding pregnancy protection because Title VII was itself indifferent to state civil rights protections that it did not address. As the Court put it: "Title VII would prohibit precisely the same employment practices, and be enforced in precisely the same manner, even if no State made additional employment practices unlawful." *Id.* at 103, 103 S.Ct. at 2903. The Court found no legislative intent in Title VII to either encourage states to broaden civil rights protections or to shelter state civil rights laws that did so. *See id.* at 103 n. 24, 103 S.Ct. at 2903 n. 24.

It did, however, find an intent on the part of Congress not to preempt those portions of the New York Human Rights Law which "provide[d] a means of enforcing Title VII's commands." *See id.* at 102, 103 S.Ct. at 2902. The reason was plain enough. Title VII contemplated and encouraged a joint state and federal enforcement scheme, whereby all employee grievances under Title VII would first be referred to the state grievance mechanism, if one existed. In New York State, it was under the authority of the New York Human Rights Law that employee grievances had traditionally been handled. Thus, for ERISA to preempt a state law that Title VII not only encouraged states to enact, but upon which

---

**4.** Of course, Congress overcame the *Gilbert* ruling with the passage of the Pregnancy Discrimi- nation Act of 1978, Pub.L. No. 95–555, 92 Stat. 2076 (codified at 42 U.S.C. § 2000e(k)).

it also relied in its enforcement mechanism, would be to impair and modify federal legislation contrary to ERISA's savings provision. *See id.* at 101–02, 103 S.Ct. at 2902.

The majority here considers state exemption laws akin to the pregnancy protection provision at issue in *Shaw.* The Bankruptcy Code is simply indifferent to the substance of state exemption schemes, as Title VII was to New York's pregnancy protection rule, and as such must yield to ERISA's peculiarly jealous nature. I disagree. The Bankruptcy Code not only authorizes states to fashion exemptions in bankruptcy as they see fit, but provides therein a model example of an exemption that the majority would prohibit. To my mind, A.R.S. § 33–1126(B) is the equivalent of those portions of the New York Human Rights Law that the Court saved in *Shaw,* not those it preempted.[5] Indeed, it could be argued that Arizona's exemption of the ERISA-qualified plan should survive preemption even if ERISA did not contain a savings provision. Here, § 1144(d) spares any doubt. Disallowing a valid state exemption in bankruptcy would impair the Bankruptcy Code no less than invalidating state civil rights grievance mechanisms impairs Title VII.

ERISA is a complicated statute, as are the Bankruptcy Code and state exemption statutes; but while ERISA preemption is easy to invoke and may marginally simplify the law, it does not always result in the best resolution of state and federal interests that present day federalism requires. I do not think the majority has resolved these competing interests appropriately in this case. Therefore, I respectfully dissent.

---

**5.** The majority also makes the point that part of the Court's rationale for saving certain portions of the New York Human Rights Law was to spare any increased burden on the EEOC, whereas there is no correlative reason to spare A.R.S. § 33–1126(B). *See supra* at 14618. This is true so far as it goes, but, again, not pertinent in bankruptcy. All bankruptcy proceedings are within the original and exclusive jurisdiction of the federal district courts, 28 U.S.C. § 1334(a), and whether an asset is exempt will make little difference to the workload of the bankruptcy judge handling the case. If anything, it will likely prove more burdensome to manage the distribution of an ERISA-qualified plan to creditors than to simply exempt the plan under state law.