PATTEN PACKAGE COMPANY, a corporation, Plaintiff in *Error,* v. J. F. HOUSER, *Defendant in Error,* GULF REFINING COMPANY, a corporation, *Garnishee.*

136 So. 353.

Division A.

Opinion filed July 28, 1931.

*D. E. Knight* and *H. V. Knight,* for Plaintiff in Error;
*J. L. Frazee,* for Defendant in Error.

BUFORD, C.J.—Plaintiff in error procured a judgment against the defendant in error, Houser, in the Circuit Court of Bradford County, in the sum of $635.50. After judgment a writ of garnishment was procured directed to the defendant Houser and Gulf Refining Company, garnishee. Houser filed motion and affidavit claiming the money in the hands of Gulf Refining Company and due to him was due for personal labor and services and was exempt from garnishment under the provisions of chapter 3885 R. G. S., 5792 C. G. L. Trial was had before the court,

jury being waived and the court found in favor of Houser and entered judgment releasing the garnishment. The only evidence offered upon this trial was that of Houser, the defendant, which was as follows:

"My name is J. F. Houser, I am employed by Gulf Refining Company to deliver gas, oil etc., from their plant here to customers in this territory. The Gulf Refining Company, garnishee in this Cause, is due me $703.19 for delivering gasoline, kerosene, compressor oil, motor oil, cylinder oil, deisel oil, lubricants and greases. They paid me two cents a gallon for delivering gasoline. I have no contract with them, but look after the stocks, premises and grounds. I have no discretion in granting credits and no discretion in selling goods, and my contract could be terminated at their discretion. The methods of my work are directed by the Company. They have a specialty man who has jurisdiction over me and could discharge me and who checks up on my work.

The sum of $703.19 held by the Gulf Refining Company and tied up in this action is due me by them for my services in delivering their materials. I have not one cent invested in the Company's business and no interest in sales or credits. My pay is based entirely on my work in delivering the Company's goods to their customers.

I use one truck in the delivery of all this material. It is a Ford truck valued at from two to three hundred dollars. Could do the work with a horse and wagon. Sometimes we use a trailer in doing this work. My son, Claud Houser, works for me. He is 30 years old, is married and has his own family. He gets one-half of the net proceeds generally. I have the power to discharge him if I wished. I have not used two trucks in this work this year but have had other employees; none at the present time. It has been about a month since I had other employees work for me in this work. I have worked for the Gulf Refining Company for six years January 4th last.

The Gulf Refining Company delivers their materials to storage tanks and to their warehouse, all of which belongs to the Company. It is not part of 'my job to

secure new customers, it is not required of me. · They pay me two cents a gallon for delivering gasoline, one cent a pound on grease, but I am not permitted to deliver on a credit. My pay for delivering lubricants is on a graduated scale from two and one-half to nine cents a gallon. The two large trucks belong to me in a way, when I get better title to them that is to my son and myself. The Ford truck used in the business belongs to me and my son equally, the trailer the same way. That is they belong to J. F. Houser & Son, Inc., that is a family corporation, belonging to myself and my son, our wives and our children I own one share of stock in that corporation out of a total of fifty shares. The corporation does not rent us the trucks. We use them, however, and do not keep any special account for the corporation. We do not pay rent on the corporation property, we use in delivering gasoline and oil.

The warehouse and plant belongs to the Gulf Refining Company. My pay is based on the actual delivery of materials. The use of the trucks just goes in the business and after paying the actual expenses me and my son just divide the net proceeds. I do not personally deliver much gasoline, oil or greases except at the warehouse to people who call there for it. My truck delivers gasoline, oil and grease every day. I know that I delivered some of the materials at the warehouse for which this $703.19 is for, but I would not say how much. I cannot say now many times I went out with the truck if at all during the time this money was due, and would not say that I went with the truck at all for delivery of this material. I know I sold gasoline and oil at the warehouse that month. My son does the going out or the hauling and driving of the truck. He is my driver now. My son works with me and for me in this business. I could discharge him I suppose. Some of the money involved herein is due for expenses I dont know how much.''

The statute under which the exemption was claimed provides that the exemption should apply to money or other thing which is due for the ''personal labor or services'' of the person claiming the exemption.

The purpose of the exemption laws is to prevent the unfortunate citizen, from being deprived of the necessaries

of life and to preserve for him and his family certain things reasonably necessary to enable him to earn a livelihood and where his livelihood is produced by his personal labor and services to so protect him and his family that such earnings may not be taken from them and they be left destitute and a charge upon charity. See Noland vs. Wickham, 9 Ala. 169, 44 Am. Dec. 435; Reynolds vs. Hines, 83 Iowa 342, 44 N. W. 851; Sterman vs. Hand, 160 Iowa 356, 141 N. W. 934, 46 L. R. A. (N. S.) 287, and note.

The rule appears to be in almost all jurisdictions that exemption statutes should be liberally construed in favor of the debtor that the very purpose of the statute in preserving to the unfortunate debtor and his family means of living without becoming a charge upon the public may be accomplished. Favers vs. Glass, 22 Ala. 621, 58 Am. Dec. 272; Ellis vs. Pratt City, 111 Ala. 629, 20 Sou. 649; 33 L. R. A. 264; Birdsong vs. Tuttle, 52 Ark. 9, 12 S. W. 158; Robinson vs. Hughes, 117 Ind. 293, 20 N. E. 220, 3 L. R. A. 383, Notes 21 Am. Dec. 553, 45 Am. Dec. 253; Brimsted vs. Loffman, 105 Minn. 286, 117 N. W. 515, 17 L. R. A. (N. S.) 990.

Persons who claim the benefits of exemption statutes must bring themselves at least within the intent of the provisions of such statute. A construction of the statute should not be so liberal as to allow it to be perverted for the benefit of those not coming within its purview, but should not be so strict as to defeat the object sought to be accomplished. Charles vs. Lamberson, 63 Am. Dec. 457; Elliott vs. Hall., 3 Idaho 421, 31 Pac. 769; Ordway vs. Wilbur, 16 Me. 263, 33 Am. Dec. 663; Caldwell vs. Ryan, 210 Mo. 17, 108 S. W. 533, 16 L. R. A. (N. S.) 494.

The question here to be determined, therefore, is whether or not the defendant claiming the exemption has brought himself within the purview of the statute, that is whether or not the money due him from Gulf Refining Company is due him for personal labor or service rendered by him.

The substance of his testimony is that at the time the garnishment was served Gulf Refining Company owed him the sum of $703.19 for delivery of gasoline, kerosene, compressor oil and other petroleum products; that under his agreement with the company he delivered gasoline to the customers of the company and received for his services the sum of two cents per gallon and that he received compensation for delivering other products based upon some scale which he does not set out in his testimony. He delivered the products at the company's plant and also hauled and delivered the products to filling stations and dealers. In the delivery of the products he furnished his own tank trucks or wagons and employed his son, an adult, the head of a family, and occasionally other employees. It appears from his testimony that his son drives the truck and make deliveries to dealers while he looks after the tank yard or plant and makes deliveries to those who call there for products. He pays the expenses of the delivery from the tank yard to the customers. When all expenses incident to delivering have been paid he and his son divide equally the net balance of the compensation paid by the company to him.

The $703.19 was not to come to him as compensation for his personal labor and services. It was to come to him as compensation for delivery of the petroleum products for the Gulf Refining Company, but was to pay the expenses which he had advanced or incurred in and about making such delivery with the net amount left thereafter to be divided equally between himself and son. Therefore, it was for the expense account, for the services of the adult son and for his services rendered.

It appears to us that the exemption statute can not be construed to extend to cover a case of this kind.

It appears that the status of the defendant here was that of an independent contractor.

In Adcock vs. Smith, 97 Tenn. 373, 56 Am. St. Rep. 810, 37 S. W. 91, it was said:

"Wages, in the sense of exempting statutes, are held to be such as are earned by the hands and labor of the individual himself and his family under his direction, and does not extend to what he earns as superintendent or master of other laborers; 2 Shinn on Attachment and Garnishment, 558. This holding will not be questioned, but the point presented is, Does the term 'wages' embrace compensation to be paid by the job or by the amount performed, or is it limited to cases where the compensation is fixed by the length of time engaged. In Shinn on Attachment and Garnishment, it is held that the wages of a miner who himself works in a coal mine at so much per ton comes within the exemption, citing Pennsylvania Coal Co. vs. Costello, 33 Pa. St. 241.

In Ford vs. St. Louis, etc. Ry. Co., 54 Iowa 728, the court, among other things, said " 'The word 'wages' means the compensation paid to a hired person for his services. This compensation to the laborer may be a specified sum for a given time of service or a fixed sum for a specified piece of work, that is, payment may be made by the job. The word 'wages' does not imply that the compensation is to be determined solely upon the basis of time spent in service, but it may also be determined by the work done. Wages means compensation estimated in either way.' Our own decisions hold that the statutes creating exemptions are to be liberally construed in favor of the debtor class: Collier vs. Murphy, 90 Tenn. 300; 25 Am. St. Rep. 698.''

In 91 Am. Dec. 411, following the case of Brown vs. Hebard, 20 Wisc. 326, will be found an extensive note regarding such exemptions as are here under contemplation but no case there cited meets the conditions which are found in this case. A case, however, much in point is that of Henderson vs. Knott, 36 Neb. 154, 38 Am. St. Rep. 720, 54 N. W. 87, where it was held that one who contracts to manufacture bricks at a fixed price per thousand, furnishing and paying all help, keeping the machinery in repair and feeding a team supplied by the other contracting party was not a laborer within the meaning of the statute

providing that no property of a debtor should be exempt from levy or sale of execution or attachment for clerks; laborers' or mechanics' wages. While that case appeared to turn somewhat on the definition to be given the term "laborer", it also involves, necessarily, the construction to be given in this connection to the words "personal labor or services". See also Fox vs. McClay, 48 Neb. 820, 67 N. W. 888 and Johnson vs. Barrills, 727 Oregon 251, 50 Am. St. Rep. 517, 41 Pac. 656.

In this case the evidence shows that as heretofore stated the amount due the defendant claiming the exemption was the total sum of $703.19, an indeterminable part of which was for the personal labor and service of the defendant; another part of which was for the earnings of a truck, or trucks, furnished by himself and his son; another part for the expense of operating the truck and another part for the personal labor and services of the adult son, whose relationship to the defendant was of no consequence in this case. The defendant testified that he had no contract with Gulf Refining Company and yet he testified that his agreement with the Company was that he would get two cents per gallon for gasoline delivered by him or under his direction and would receive a fixed compensation based upon units delivered of other petroleum products. Such agreement constituted a contract, whether verbal or written, and it appears that the defendant was to receive this compensation regardless of whether he personally performed the labor and services, or had the same performed by others to whom he was accountable for their compensation, and he assumed to pay the expenses incident to such deliveries.

There is no difference in the principle between the status of the exemption claimant in this case and in a case where A would contract with B to haul and deliver commodity from one point to another and when after entering into such contract and agreement A furnished the

trucks and paid the necessary expense of running the same and employed drivers to perform the actual labor contemplated under the contract.

For the reasons stated, the judgment should be reversed and it is so ordered.

Reversed.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.