**In re Edward SCHLEIN and Kay Schlein, Debtors.**

**Edward SCHLEIN and Kay Schlein, Plaintiffs–Appellants,**

v.

**George E. MILLS, Jr., Trustee, Florida National Bank, Defendant–Appellee.**

No. 92–2670.

United States Court of Appeals, Eleventh Circuit.

Dec. 2, 1993.

746

Richard W. Hennings, Tavares, FL, for plaintiffs-appellants.

David R. McFarlin, Wolff, Hill, McFarlin & Herron, Orlando, FL, for defendant-appellee.

Before EDMONDSON and CARNES, Circuit Judges, and MORGAN, Senior Circuit Judge.

CARNES, Circuit Judge:

Dr. Edward Schlein and his wife, Kay Schlein, debtors in a Chapter 7 bankruptcy case, appeal from an order of the district court that affirmed in part and reversed in part the judgment of the bankruptcy court on certain exemptions they claimed. This appeal requires us to confront the tension between the preemption provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1144(a), and the state law exemptions relating to "employee benefit plans" that are available to debtors in "opt-out" states under the Bankruptcy Code, 11 U.S.C. § 522. More specifically, we must decide whether such state exemptions are preempted by ERISA's preemption clause or are saved by its "saving" clause, which is contained in 29 U.S.C. § 1144(d). We join the Fifth and Eighth Circuits in holding that ERISA does not preempt state exemptions that are enacted pursuant to the express authority bestowed on states under the Bankruptcy Code. We reverse the district court's contrary holding on this issue.

We are also called upon to decide a Florida law issue that is unrelated to the ERISA preemption question: whether the Florida wage exemption statute, Fla.Stat.Ann. § 222.11 (West 1989), provides an exemption for that part of a bank account that consists of the earnings of an independent contractor. We conclude that under Florida law, the earnings of an independent contractor are not protected under § 222.11. We affirm the district court's holding on this issue.

## I. BACKGROUND

The questions presented in this appeal are purely issues of law. The parties do not dispute any factual matters relevant to the legal issues. Edward Schlein is an emergency room physician who works under a medical services contract between a hospital and Medical Emergency Department Services, Inc. ("MEDS"). The Schleins are officers, directors, and shareholders of MEDS. From the moneys received under the contract, MEDS pays Dr. Schlein for his services as a physician. He testified at trial that his share of the earnings, and thus his compensation, was based upon the number of hours he worked. At oral argument, his counsel explained that the MEDS corporation was paid by the hospital for the work done by the shareholder physicians pursuant to the contract. The corporation deducted overhead expenses and then distributed the profits to each shareholder physician based upon the percentage of the total number of hours that that physician had worked. Dr. Schlein was not paid wages, the corporation did not withhold taxes from the amounts distributed, and Dr. Schlein did not consider himself an employee.

Prior to filing bankruptcy, Dr. Schlein made periodic deposits to individual retirement accounts ("IRAs") under the Internal Revenue Code, 26 U.S.C. § 408(a). Also, as a self-employed physician, Dr. Schlein set up simplified employee pensions ("SEPs") under I.R.C. § 408(k). One of the IRAs and one of

the SEPs were combined in one bank account at each of two banks.

The Schleins filed their bankruptcy petition under Chapter 11 of the Bankruptcy Code on September 13, 1988. The case was converted to Chapter 7. George E. Mills, Jr., is the trustee of the Chapter 7 estate.

## II.  DISCUSSION

■ In appeals from bankruptcy judgments, this Court functions "[a]s the second court of review." *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir.1990) (citation omitted). In this role, we "examine[ ] independently the bankruptcy court's factual and legal determinations and employ[ ] the same two review standards used by the district court." *In re Club Assocs.*, 951 F.2d 1223, 1228 (11th Cir.1992) (citations omitted). These standards are well established. "Factual findings by the bankruptcy court are reviewed under the limited and deferential clearly erroneous standard. ... In contrast, legal conclusions by the bankruptcy court and the district court are reviewed ·by this court *de novo.*" *Id.*

### A.  THE ERISA PREEMPTION ISSUE

#### 1.  The Schleins' Exemptions and the Trustee's Objections

After converting their case to Chapter 7 of the Bankruptcy Code in December of 1988, the Schleins filed a Schedule B-4 (Property Claimed As Exempt). Property described as follows was included on the schedule:

Debtors claim an exemption pursuant to Fla.Stat. § 222.21(2)(a) in all monies on deposit in their respective individual retirement account, (IRA)–simplified employee pension (SEP) bank accounts established pursuant to Section 408 of the Internal Revenue Code, including all monies in such accounts at First Federal Savings & Loan Association, Leesburg, Florida (IRA–SEP account with an approximate balance of $138,927.62); Barnett Bank, Leesburg, Florida (IRA–SEP account with approximate balance of $28,655.92); and

Sun First National Bank of Lake County, Leesburg, Florida (IRA account with approximate balance of $2,488.86). Total Value of Pension Exemption: $170,072.40.

According to the bankruptcy court, the Trustee objected to the claimed exemption in the following property:

(i) An Individual Retirement Account/Simplified Employee Pension Account ("IRA/SEP account") in First Federal Savings and Loan Association with a balance of $136,502.70.

(ii) An IRA/SEP account in Barnett Bank with a balance of $26,250.00.

(iii) A regular checking account in Barnett Bank with a balance of $54,253.55.

*In re Schlein*, 114 B.R. 780, 781 (Bankr. M.D.Fla.1990).[1]

#### 2.  The Bankruptcy and District Court Rulings

After a hearing on those objections, the bankruptcy court sustained the Trustee's objections to the Schleins' claims for exemption. The Schleins were ordered to turn over the funds in their retirement accounts to the Trustee. According to the Schleins, the total amount taken by the Trustee was $175,278.83, which included the principal amount of the IRA and SEP deposits plus accrued interest. The bankruptcy court's ruling was based on the following syllogism: The Schleins' "SEP/IRA account is an employee benefit plan as defined by ERISA"; ERISA, 29 U.S.C. § 1144(a), preempts "any and all state laws insofar as they may now or hereafter relate to any employment benefit plan"; Florida Statute "§ 222.21(2)(a) directly relates to an employee benefit plan covered by ERISA"; therefore, ERISA preempts Fla. Stat. § 222.21(2)(a). *In re Schlein*, 114 B.R. at 782–83.

The district court agreed with the bankruptcy court's conclusion that Fla.Stat. § 222.21(2)(a) relates to ERISA plans, and is therefore preempted by ERISA. The court reasoned that "[t]he Supreme Court has re-

---

1.  The opinions of the bankruptcy and district courts and the record on appeal do not explain the disparity between the amounts claimed by the Schleins and the amounts objected to by the Trustee. In any event, that disparity is not relevant to the issues we consider.

peatedly held that ERISA shall preempt any state law that 'relates to' an employee benefit plan, even if the law is consistent with ERISA's substantive requirements." The court also noted that the Supreme Court has declared that this broad preemption is not restricted to state laws that affect plan terms, conditions, or administration. Finding that "the existence of a pension plan is a critical factor in establishing a debtor's right to exemption under section 222.21(a)," the court held that section to be preempted by ERISA.

The court also rejected the Schleins' argument that the saving clause contained in 29 U.S.C. § 1144(d) applies to Fla.Stat. § 222.-21(2)(a). The court concluded that although debtors can opt for state exemption schemes, "the Bankruptcy Code does not transform state laws into federal laws that section [1144(d) of ERISA] saves." Relying primarily on the Ninth Circuit's opinion in *Pitrat v. Garlikov*, 947 F.2d 419 (9th Cir.1991), *withdrawn*, 992 F.2d 224 (9th Cir.1993),[2] the court found that because "state law exemptions are not necessary to the enforcement of the Bankruptcy Code," and because "the Bankruptcy Code, as a whole, can operate effectively without any state law … section [1144(d) ] does not save section 222.21(2)(a) from preemption."

### 3. The Relevant ERISA, Bankruptcy, and State Law Provisions

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. Section 514 also provides the following saving clause:

Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

Section 514(d), 29 U.S.C. § 1144(d).

Under the Bankruptcy Code, an individual debtor is entitled to exempt certain property that has been swept into his bankruptcy estate under 11 U.S.C. § 541(a). While the Bankruptcy Code provides a set of federal bankruptcy exemptions in 11 U.S.C. § 522, Bankruptcy Code § 522(b) gives states the option of "opting out" of the federal bankruptcy exemption scheme. In states that have opted out, the debtor may only exempt "any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition…." 11 U.S.C. § 522(b)(2)(A). Under the federal set of exemptions, the following may be exempted:

a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1986 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409).

11 U.S.C. § 522(d)(10)(E).

Florida law provides for an "opt out/opt in" scheme for its debtors who file for protection under the Bankruptcy Code. First, Fla.Stat. § 222.20 establishes the general nonavailability of the federal bankruptcy exemptions under 11 U.S.C. § 522:

In accordance with the provision of s. 522(b) of the Bankruptcy Code of 1978 (11 U.S.C. s. 522(b)), residents of this state shall not be entitled to the federal exemptions provided in s. 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. s. 522(d)). Nothing herein shall affect the exemptions

**2.** When the district court handed down its decision in this case, the *Pitrat* opinion had not yet been withdrawn. The complicated appellate history of the *Pitrat* case is set out in footnote 5 of this opinion.

given to residents of this state by the State Constitution and the Florida Statutes.

Fla.Stat. § 222.201 then opts the state back in as far as exemptions in Bankruptcy Code § 522(d)(10) are concerned:

> (1) Notwithstanding s. 222.20, an individual debtor under the federal Bankruptcy Reform Act of 1978 may exempt, in addition to any other exemptions allowed under state law, any property listed in subsection (d)(10) of s. 522 of that act.

Finally, in the section that the bankruptcy and district courts specifically held preempted by ERISA, Florida law expressly provides for exemption of pension money and retirement or profit-sharing benefits:

> Except as provided in paragraph (b), any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement or profit-sharing plan that is qualified under s. 401(a), s. 403(a), s. 403(b), s. 408, or s. 409 of the Internal Revenue Code of 1986, as amended, is exempt from all claims of creditors of the beneficiary or participant.

Fla.Stat. § 222.21(2)(a). There is no dispute in this case that the Schleins' IRA/SEP fits squarely within this exemption. The dispute is over whether this Florida law exemption is preempted by ERISA.

### 4. The Scope of ERISA Preemption

#### a. The "Related To" Requirement of § 514(a)

The Supreme Court examined in detail "the scope of ERISA's pre-emption provisions" in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), a case involving two New York laws relating to employee benefits plans which

"play a significant role in the enforcement of Title VII."[3] *Id.* at 101, 103 S.Ct. at 2902. In "address[ing] the scope of several provisions of ERISA that speak expressly to the question of pre-emption," the Court described its inquiry as follows: "The issues are whether the [state laws in question] 'relate to' employee benefit plans within the meaning of § 514(a), and, if so, whether any exception in ERISA saves them from preemption." *Id.* at 96, 103 S.Ct. at 2899. Facing as we do an analogous situation in which a state statute plays a significant role in implementing a comprehensive federal statutory scheme, namely the Bankruptcy Code, we will employ the *Shaw* framework of analysis.

The Supreme Court had "no difficulty" in concluding that the two New York statutes at issue in *Shaw* were " 'relate[d] to' employee benefit plans within the meaning of § 514(a)," *id.*, and we reach the same conclusion concerning Fla.Stat. § 222.21(2)(a). As the Court explained, "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 96–97, 103 S.Ct. at 2900. The Court further noted that "Congress used the words 'relate to' in § 514(a) in their broad sense." *Id.* at 98, 103 S.Ct. at 2900. Thus, ERISA should not be read to "preempt only state laws specifically designed to affect employee benefit plans," nor should "§ 514(a) be interpreted to preempt only state laws dealing with the subject matters covered by ERISA...." *Id.* The Court attempted to qualify its broad construction of "relate to" when it noted, in a footnote, that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."

---

3. The Court described these statutes as follows:
    The Human Rights Law, N.Y.Exec.Law §§ 290–301 (McKinney 1982 and Supp.1982–1983), is a comprehensive antidiscrimination statute prohibiting, among other practices, employment discrimination on the basis of sex. § 296.1a(a). The New York Court of Appeals has held that a private employer whose employee benefit plan treats pregnancy differently from other nonoccupational disabilities engages in sex discrimination within the meaning of the Human Rights Law. ...

The Disability Benefits Law, N.Y.Work. Comp.Law §§ 200–242 (McKinney 1965 and Supp.1982–1983), requires employers to pay certain benefits to employees unable to work because of nonoccupational injuries or illness. ... [T]he Disability Benefits Law now requires employers to provide the same benefits for pregnancy as for any other disability.
*Shaw,* 463 U.S. at 88–90, 103 S.Ct. at 2895–96 (footnotes and citation omitted).

*Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21. However, upon revisiting the question of pre-emption under § 514(a) in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Supreme Court explained that its decisions after *Shaw* "reaffirmed" the rule "that state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of § 514(a)." *Id.* at 829, 108 S.Ct. at 2185.

The statutory language of Fla.Stat. § 222.21 does not expressly mention ERISA. However, the statute does refer to "retirement or profit-sharing plan[s] that [are] qualified under s. 401(a), s. 403(a), s. 403(b), s. 408, or s. 409 of the Internal Revenue Code of 1986...." In linking the protected plans to those sections of the Internal Revenue Code which designate ERISA-qualified plans, Florida has enacted a law that "relate[s] to" ERISA benefit plans. *See Pitrat v. Garlikov,* 947 F.2d 419 (9th Cir.1991) (construing a virtually identical state pension plan exemption to reach the same conclusion), *withdrawn,* 992 F.2d 224 (9th Cir. 1993);[4] *see also In re Dyke,* 943 F.2d 1435, 1448 (5th Cir.1991) (Concluding that, when faced with an issue identical to the one before this Court, a "reference in [a Texas] state law to 'stock bonus, pension, profit-sharing or similar plans' [was] ... a specific reference to ERISA benefit plans"). We hold that Fla.Stat. § 222.21(2)(a) relates to ERISA benefit plans and, absent an applicable exception, is preempted by ERISA § 514(a).

**b. The § 514(d) Exception to Preemption**

Following the analytical structure laid down by the Supreme Court in *Shaw,* which was also followed by the Fifth Circuit in *Dyke,* we next consider whether any of the narrow exceptions to § 514(a) saves this Florida law from preemption. *See Shaw,* 463 U.S. at 100, 103 S.Ct. at 2902; *Dyke,* 943 F.2d at 1446–50.

To overcome the Supreme Court's conclusion that New York's Human Rights Law and Disability Benefits Law were "related to" employee benefit plans, the appellants in *Shaw* argued, as the Schleins in the present case argue, that the state law in issue was saved from preemption by the ERISA saving clause of § 514(d). That clause provides that ERISA's preemption clause "shall not be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." While this provision is to be construed as an exception to ERISA's broad preemption of state law in the area of employee benefit plans, it by no means swallows the rule:

> ERISA's structure and legislative history, while not particularly illuminating with respect to § 514(d), caution against applying it too expansively. As we have detailed above, Congress applied the principle of pre-emption "in its broadest sense to foreclose any non-Federal regulation of employee benefit plans," creating only very limited exceptions to pre-emption. ... While § 514(d) may operate to exempt provisions of state laws upon which federal laws depend for their enforcement, the combination of Congress' enactment of an all-inclusive pre-emption provision and its enumeration of narrow, specific exceptions to that provision makes us reluctant to expand § 514(d) into a more general saving clause.

*Shaw,* 463 U.S. at 104, 103 S.Ct. at 2903.

Nonetheless, the Court in *Shaw* left no doubt that § 514(d) does have some teeth. The Court began by observing that "State laws obviously play a significant role in the enforcement of Title VII." *Shaw,* 463 U.S. at 101, 103 S.Ct. at 2902. The Court explained that the substance of this role is apparent in at least two respects. First, "Title VII expressly preserves nonconflicting state laws in its § 708." *Id.* Second, "Title VII requires recourse to available state administrative remedies. ... In its subsequent proceedings, the EEOC accords 'substantial weight' to the state administrative determination." *Id.* at 101–02, 103 S.Ct. at 2902. These considerations combined to support the conclusion that "pre-emption of [New York's] Human Rights Law would im-

---

**4.** This holding and *Pitrat*'s related holding that an Arizona pension plan exemption law was preempted by ERISA were withdrawn by the Ninth Circuit. See footnote 5, below.

pair Title VII to the extent that the Human Rights Law provides a means of enforcing Title VII's commands." *Id.* at 102, 103 S.Ct. at 2902. The Court explained this holding in some detail:

> If ERISA were interpreted to pre-empt the Human Rights Law entirely with respect to covered benefit plans, the State no longer could prohibit the challenged employment practice and the state agency no longer would be authorized to grant relief. The EEOC thus would be unable to refer the claim to the state agency. This would frustrate the goal of encouraging joint state/federal enforcement of Title VII; an employee's only remedies for discrimination prohibited by Title VII in ERISA plans would be federal ones. Such a disruption of the enforcement scheme contemplated by Title VII would, in the words of § 514(d), 'modify' and 'impair' federal law.

*Id.* at 102, 103 S.Ct. at 2902–03. The Court added, however, that while § 514(d) saves from preemption state laws that redress discrimination that is proscribed under Title VII, "the intent of Congress to provide comprehensive pre-emption of state law" requires that the protections of § 514(d) not be extended to state laws that prohibit activities permitted under federal law:

> Although Title VII does not itself prevent States from extending their nondiscrimination laws to areas not covered by Title VII, it in no way depends on such extensions

for its enforcement.... Quite simply, Title VII is neutral on the subject of all employment practices it does not prohibit. We fail to see how federal law would be impaired by pre-emption of a state law prohibiting conduct that federal law permitted.

*Id.* at 103–04, 103 S.Ct. at 2903 (citation and footnote omitted).

■ Three circuits have applied the teachings of *Shaw* in coming to grips with the identical question before this Court: whether ERISA preempts state law pension plan exemptions relied upon by debtors in federal bankruptcy cases. The Fifth and Eighth Circuits have held that § 514(d) saves such state law exemptions from preemption. *In re Dyke,* 943 F.2d 1435 (5th Cir.1991); *In re Vickers,* 954 F.2d 1426 (8th Cir.), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 4, 120 L.Ed.2d 933 (1992). The Ninth Circuit, over a strong dissent and in an opinion that has since been withdrawn, found that an Arizona exemption virtually identical to the Florida exemption in the present case was preempted by ERISA. *Pitrat v. Garlikov,* 947 F.2d 419 (9th Cir.1991), *withdrawn,* 992 F.2d 224 (9th Cir.1993).[5] We conclude that the well-reasoned analyses of the Fifth and Eighth Circuits, and the thoughtful dissent of the Ninth Circuit's Judge Sneed, offer the better view.

The Fifth Circuit perceived a direct analogy between Title VII and the Bankruptcy Code: "Like Title VII, the Bankruptcy Code

---

5. The tortured appellate history of the *Pitrat* case warrants explanation. After the panel issued its original opinion in October of 1991, the Supreme Court decided *Patterson v. Shumate,* —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) in which the Court, according to the Ninth Circuit:

> resolved a conflict among the circuits in holding that the phrase "applicable nonbankruptcy law" contained in 11 U.S.C. § 541(c)(2) includes federal as well as state law and that an anti-alienation provision in an ERISA-qualified pension plan constitutes a restriction on transfer enforceable under "applicable nonbankruptcy law" for the purposes of the § 541(c)(2) exclusion of property from a debtor's bankruptcy estate.

981 F.2d 1021 (9th Cir.1992) (published in advance sheets only) (citing *Patterson,* —— U.S. at ——–——, 112 S.Ct. at 2246–47). In a December 1992 order, the Ninth Circuit withdrew its original panel opinion in *Pitrat* and reversed the

bankruptcy court's grant of summary judgment against the debtor. 981 F.2d 1021. That withdrawal order was itself withdrawn on the rehearing. Finally, in May of 1993, the Ninth Circuit reaffirmed its reversal of the grant of summary judgment "[o]n the basis of the Supreme Court's decision in *Patterson v. Shumate....*" *Pitrat v. Garlikov,* 992 F.2d 224, 225 (9th Cir.1993). Because it decided the case on the ground that the debtors' interests in certain pension plans were excluded from the bankruptcy estates under 11 U.S.C. § 541(c)(2), the court did not "decide whether the plans qualify for exemption under 11 U.S.C. § 522(b)(2)(A)," *id.* at 226 n. 1, a question which had been answered in the negative in the original panel opinion. 947 F.2d at 426–29. Thus, while the original *Pitrat* holding on the question before us differs from the decisions of the Fifth and Eighth Circuits and our decision in this case, it is no longer precedent even in the Ninth Circuit.

relies on state law to assist in the implementation and enforcement of its goals." *Dyke,* 943 F.2d at 1449. Primary among these goals is that "a debtor comes out of bankruptcy with adequate possessions to have a 'fresh start.'" *Id.* (citing H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 126, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6087). Because Congress invited the states to participate in determining what that "fresh start" would entail, ERISA preemption of every pension-related state exemption would substantially impair the ability of the Bankruptcy Code to ensure the envisioned "fresh start":

> The [Bankruptcy] Code adopts a federal exemption scheme which satisfies this goal; but recognizing that circumstances are different in the various states, the Code also "permits the states to set exemption levels appropriate to the locale." [H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 126, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6087.] *See* 11 U.S.C. § 522(b)(2) (1988). If this Court were to interpret ERISA to preempt provisions of the state exemption schemes, the states would be unable to set enforceable exemption levels on retirement benefits. This would relegate many debtors to a federal exemption scheme which might be inappropriate to the locale. As a consequence, the enforcement scheme contemplated in the Bankruptcy Code would be modified and impaired.

*Id.*

In its decision in *In re Vickers,* the Eighth Circuit highlighted a significant flaw in the position of the proponents of ERISA preemption of state exemption schemes. The State of Missouri had chosen to opt out of the federal exemptions and had enacted Mo. Rev.Stat. § 513.430(10)(e). This exemption is "virtually identical to that found in the federal exemption scheme" in Bankruptcy Code § 522(d)(10)(E). *In re Vickers,* 954 F.2d at 1429. The court was struck by the patent inconsistency presented by this situation: "It would be incongruous to hold pension benefits exempted under the federal bankruptcy law, but to strike down identical provisions enacted by the state under the express authorization of the bankruptcy code." *Id.*

The Ninth Circuit also looked to the Supreme Court's *Shaw* decision for guidance. However, it focused on the Supreme Court's conclusion that "ERISA pre-empted those portions of the New York statute which prohibited practices not unlawful under Title VII." *Pitrat,* 947 F.2d at 428 (citing *Shaw,* 463 U.S. at 102–03, 103 S.Ct. at 2902–03). Under the Ninth Circuit's framework for analysis:

> Careful comparison of the state law exemptions allowed by the bankruptcy code with both the state law provisions saved by Title VII and those state law provisions pre-empted by ERISA in *Shaw* is the first step in determining whether the bankruptcy code would be impaired if Arizona's exemption for ERISA-qualified plans were pre-empted.

*Id.* at 428–29. The court then concluded that because "[t]he state law exemptions allowed by the bankruptcy code do not affirmatively aid the federal law by lessening the workload of any federal agency or court administering the federal law as did those portions of the state law saved by Title VII in *Shaw* ... the state law exemptions allowed by the bankruptcy code are analogous to the parts of the New York law which *Shaw* held ERISA pre-empted." *Id.* at 429. The Ninth Circuit then compared "the bankruptcy code's allowance for state exemptions with Title VII's allowance for state legislation," and found that the Bankruptcy Code not only provides for state legislation, it "allows for states to provide that their exemptions will be exclusively enforced." *Id.* But this did not lead the Ninth Circuit to the conclusion that the Bankruptcy Code would be impaired by ERISA preemption:

> The bankruptcy code would not be impaired if there were no state law exemptions at all for it to enforce. Thus since the bankruptcy code can operate in a perfectly effective manner without any state law, it is not impaired by the failure of a particular state exemption law.

*Id.* The district court in the present case used the same reasoning to conclude that the Florida statutory exemption is preempted by ERISA.

We agree with the Eighth Circuit that the reasoning contained in Judge Sneed's dissent in *Pitrat* is far more persuasive:

> A straightforward preemption analysis focusing solely on the force and effect of the ERISA preemption provision as it relates to a state exemption scheme ignores the Bankruptcy Code. Just as Congress is empowered to reserve for itself an area for exclusive regulation and control, as it has certainly done for pension and welfare benefit plans, it may also authorize states to exercise final authority without regard to other federal legislation. I believe this has been done in the Bankruptcy Code.

*Id.* at 430 (Sneed, J., dissenting). Judge Sneed then homed in on the flaw in the *Pitrat* majority's logic:

> The majority here considers state exemption laws akin to the pregnancy protection provision at issue in *Shaw.* The Bankruptcy Code is simply indifferent to the substance of state exemption schemes, as Title VII was to New York's pregnancy protection rule, and as such must yield to ERISA's peculiarly jealous nature. I disagree. The Bankruptcy Code not only authorizes states to fashion exemptions in bankruptcy as they see fit, but provides therein a model example of an exemption that the majority would prohibit. ...
> Disallowing a valid state exemption in bankruptcy would impair the Bankruptcy Code no less than invalidating state civil rights grievance mechanisms impairs Title VII.

*Id.* at 432 (Sneed, J., dissenting).

The Bankruptcy Code was enacted as a comprehensive scheme to regulate debtor-creditor relationships after the filing of a bankruptcy petition. As part of this scheme, responsibility for defining what property debtors will take out of bankruptcy is shared with the states. ERISA, on the other hand, is a comprehensive regulatory program that governs employer-employee relations in the area of private employee benefit plans. Congress made clear that it did not want the states to interfere in this area. But as the Supreme Court has taught us, this does not mean that Congress intended ERISA preemption to ride roughshod over other areas of federal legislation, whether it be Title VII, the Bankruptcy Code, or other comprehensive federal schemes. In relying on the approach adopted by the Ninth Circuit in the now-withdrawn *Pitrat* case, the district court fell into the same trap that Judge Sneed found the *Pitrat* majority had stumbled into—the failure to accommodate or account for the policies and goals underlying the Bankruptcy Code.

■ The district court accepted the Trustee's argument that Bankruptcy Code § 522(b)(2)(A) does not "federalize" state exemptions for purposes of the ERISA saving clause. We must reject this extremely narrow reading of ERISA § 514(d)'s prohibition of constructions that "alter, amend, modify, invalidate, impair, or supersede any law of the United States." Under the district court's circumscribed approach, virtually all attempts by Congress to devise a federal-state partnership in a regulated area would be subject to the swing of the ERISA preemption axe. We do not believe that was what Congress intended.

The district court's preemption conclusion was based upon its reasoning that "state law exemptions are not necessary to the enforcement of the Bankruptcy Code," which "can operate effectively without any state law." Evidently Congress did not think so, because it included in the Bankruptcy Code the provision, 11 U.S.C. § 522(b)(1), that gives states the authority to define exemptions. Moreover, the standard the district court applied is inconsistent with the plain language of the ERISA saving clause, 29 U.S.C. § 1144(d). That language does not state that preemption is inapplicable only when it would prevent enforcement of a federal statute. Instead, the language of the ERISA saving clause applies whenever preemption would alter or amend or modify any federal law. A holding that state exemption statutes like the one involved in this case, are preempted would alter, amend, or modify the Bankruptcy Code's provision permitting states to set

exemptions and the deliberate policy choices of Congress that underlie that provision. We do not believe that Congress intended that result. Accordingly, we hold that Fla.Stat. § 222.21(2)(a) is not preempted by ERISA.[6]

## B. THE WAGE EXEMPTION ISSUE

### 1. The Wage Exemption Statute

As they did before the bankruptcy and district courts, the Schleins argue that they are entitled to a wage exemption under Fla. Stat. § 222.11 which provides:

> No writ of attachment or garnishment or other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this state, *when the money or other thing is due for the personal labor or services of such person.* As used in this section, the term "head of family" includes any unmarried, divorced, legally separated, or widowed person who is providing more than one-half of the support for a child or other dependent. *This exemption shall apply to any wages deposited in any bank account maintained by the debtor when said funds can be traced and properly identified as wages.*

Fla.Stat. § 222.11 (emphasis added).

### 2. The Decisions of the Bankruptcy and District Courts

The bankruptcy court rejected this claimed exemption on two grounds. First, it held that Dr. Schlein was an independent contractor and as such, his remuneration was not "wages" as contemplated by § 222.11. Second, the court found that even if Dr. Schlein's earnings as a physician could be characterized as wages, "he is not entitled to the wage exemption due to his failure to trace and properly identify the funds deposit-

ed in the checking account with Barnett Bank." 114 B.R. at 783–84. The district court affirmed on each of these grounds. At oral argument, the Trustee conceded that he does not dispute the tracing of funds proffered by the Schleins in their brief; instead, he bases his position on the legal characterization of those funds. Because of this concession and our review of the record, we hold that the factual finding of the bankruptcy court, repeated by the district court, that the Schleins "fail[ed] to trace and properly identify the funds deposited in the checking account" is clearly erroneous and cannot serve as a basis for affirming the judgment. We proceed to examine the other basis: the inapplicability of Fla.Stat. § 222.11 to the income of independent contractors.

### 3. The Independent Contractor Ground

Neither in their brief nor at oral argument did the Schleins contest the bankruptcy and district courts' conclusion that Dr. Schlein is an independent contractor. Instead, they argue that "[t]here is nothing in the statute to indicate the Florida legislature intended to exclude independent contractors from the protection of the statute."

■ In order to determine the meaning of a state statute, we look to the decisions of the state's courts. It is axiomatic that:

> the highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted.

*West v. American Tel. & Tel. Co.,* 311 U.S. 223, 236, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *see also Mullaney v. Wilbur,* 421 U.S. 684, 692, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975) ("This Court ... repeatedly has

---

6. Because we find that the Florida statute in this case is not preempted by ERISA, we need not address the Schleins' alternate arguments: (1) that once distributions are made by the debtor from a SEP to an IRA, the account is outside the regulatory scope of ERISA and, therefore, the state pension plan exemption is not subject to

ERISA preemption; and (2) that the Schleins are entitled to exemption of their SEP/IRA account under Fla.Stat. § 222.201 that allows Florida debtors to take advantage of the federal exemption for pension plans under 11 U.S.C. § 522(d)(10)(E).

held that state courts are the ultimate expositors of state law...."). The lone Florida Supreme Court case that has addressed this issue is *Patten Package Co. v. Houser*, 102 Fla. 603, 136 So. 353 (1931), in which the Florida Supreme Court applied the predecessor of § 222.11. Com.Gen.Laws § 5792 (1927). That statute consisted of the first sentence of the present law. Federal bankruptcy courts sitting in Florida have cited the *Patten* case to reach divergent conclusions. *Compare In re Montoya*, 77 B.R. 926, 928 (Bankr.M.D.Fla.1987) ("The payment of wages to an employee are exempt under 222.11 whereas compensation to an independent contractor is not."), *with In re Glickman*, 126 B.R. 124, 126–27 (Bankr.M.D.Fla. 1991) ("F.S. § 222.11 is not ambiguous and must be read literally. Nothing in the Statute limits its operation to employees."). After examining *Patten* and a subsequent Florida appellate decision, we agree with the conclusion reached in the *Montoya* case and by the district court in this case.

In *Patten*, the defendant was due $703.19 for his services in delivering petroleum products to customers. After a writ of garnishment was procured, directed toward the defendant and naming the petroleum company as garnishee, the defendant had successfully moved for a release of the garnishment on the grounds that the funds due him were for his "personal labor and services" and, hence, exempt from garnishment under Florida's wage exemption statute. The Florida Supreme Court reversed. After discussing generally the purpose of exemption laws, the court explained its ruling as follows:

The $703.19 was not to come to him as compensation for his personal labor and services. It was to come to him as compensation for delivery of the petroleum products for the Gulf Refining Company, but was to pay the expenses which he had advanced or incurred in and about making such delivery with the net amount left thereafter to be divided equally between himself and son. Therefore, it was for the expense account, for the services of the adult son, and for his services rendered.

It appears to us that the exemption statute cannot be construed to extend to cover a case of this kind.

It appears that the status of the defendant here was that of an independent contractor.

*Id.* at 356.

The Schleins would have us consider the court's statement that the defendant in *Patten* was an independent contractor to be dictum and not determinative of the issue. However, a more recent Florida Court of Appeals decision has read *Patten* to the contrary. In *Refco, Inc. v. Sarmiento*, 487 So.2d 75 (Fla.Dist.Ct.App.1986), a creditor appealed from an order dissolving an order of garnishment relating to the commissions earned by the debtor as a commodities brokerage account executive. The debtor relied on the same Fla.Stat. § 222.11 that is in issue here. Prior to holding that the debtor was an employee for purposes of this statute, the court articulated the question it faced:

Since appellee's position as "head of a family residing in this state" is not disputed, the only issue remaining for our consideration is whether the unpaid commissions owed to appellee were due for his "personal labor or services;" that is to say, *whether appellee was an employee or an independent contractor.*

*Id.* at 76 (emphasis added). Our inquiry must be similarly circumscribed.

Our conclusion is reinforced by the 1985 amendment to Fla.Stat. § 222.11 that added the third sentence to the statute. With this amendment, the Florida Legislature extended the protection of the statute to "wages deposited in any bank account" so long as those funds "can be traced and properly identified as wages." In drafting this amendment, the legislature chose to use the term "wages" rather than the broader language about money "due for personal labor or services," which has been in the statute since before the time of the *Patten* decision. Moreover, this amendment was made after the *Patten* decision and after at least two bankruptcy court decisions had read *Patten* as barring the earnings of independent contractors from exemption under § 222.11. *In*

re *Moriarty*, 27 B.R. 73, 74 (Bankr.M.D.Fla. 1983); *In re Malloy*, 2 B.R. 674, 676 (Bankr. M.D.Fla.1980). The Florida Legislature's choice of amendatory language does not even hint that those courts had read § 222.11 incorrectly, but instead implies that their reading of the statute was correct.

Even without the decisional law context in which the 1985 amendment was adopted, the statutory language is itself inconsistent with the Schlein's position. The statutory provision, as amended, refers to "personal labor or services" in only one place. That reference is in the first sentence which concerns the payment of money. This case does not involve the payment of money. Dr. Schlein has already been paid money and he has deposited it into a bank account. There is only one part of the statutory provision that concerns bank accounts, and that is the last sentence that protects a bank account only to the extent that the debtor has deposited wages in it. Because Dr. Schlein was not paid wages, he did not deposit any wages in · the bank account at issue. Therefore, the district court correctly held that Dr. Schlein is not entitled to the Fla.Stat. § 222.11 exemption.

We apply the rule established by the courts of Florida and hold that Dr. Schlein, who concedes that he is an independent contractor, is not entitled to exempt the earnings he has received from MEDS.

## III. CONCLUSION

We REVERSE the judgment of the district court to the extent that it held that ERISA preempts Fla.Stat. § 222.21(2)(a), and we REMAND this case to the district court for further proceedings consistent with this conclusion. In all other respects, the judgment of the district court is AFFIRMED.