**In the Matter of Jack I. SCHWARTZ, Debtor.**

**Den Norske BANK, Plaintiff,**

v.

**Jack I. SCHWARTZ, Defendant.**

**Bankruptcy No. 94–21320. Adv. No. 94–2574.**

United States Bankruptcy Court, D. New Jersey.

July 20, 1995.

Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, P.C. by Yale I. Lazris, Catherine M. Bani, West Orange, NJ, for debtor-defendant.

Cohn, Lifland, Pearlman, Herrmann & Knopf by Brian D. Zinn, Saddle Brook, NJ, for plaintiff.

Lapenna & Pasquariello, by Anthony J. Pasquariello, Clifton, NJ, for Trustee Barbara Edwards.

*OPINION*

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

The matter before the Court is the motion by Den Norske Bank ("Bank") to have an exemption claimed by debtor Jack I. Schwartz ("Debtor") declared invalid [hereinafter referred to as the "Exemption Mo-

tion"]. The following constitutes this Court's findings of fact and conclusions of law.

*FACTS*

On March 7, 1994, the Debtor filed a chapter 7 voluntary petition with all schedules and statements (the "Petition"). Schedule C of the Petition, entitled Property Claimed As Exempt, provides in pertinent part:

Debtor elects the exemptions to which debtor is entitled under (Check one box)

_____ 11 U.S.C. § 522(b)(1): Exemptions provided in 11 U.S.C. § 522(d). Note: These exemptions are available only in certain states.

_____ 11 U.S.C. § 522(b)(2): Exemptions available under applicable nonbankruptcy federal laws, state or local law.

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT MARKET VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| IRA with Smith Barry | — | $1,127,000.00 | $1,127,000.00 |

*See* Petition, Schedule C.

On March 16, 1994, notice was sent out that the First Meeting Of Creditors ("§ 341 Meeting") was scheduled for April 7, 1994. On April 14, 1994, the § 341 Meeting was held. The minutes of the § 341 Meeting indicate: (i) the attorneys for the Debtor and the Bank were present; (ii) the answer "YES" was marked for the inquiry "Does it appear that assets exceed liens and exemptions"; and (iii) the answer "NO" was marked for the inquiry "Has Interim Trustee requested amendment of schedules." *See* § 341 Meeting Minutes (docket # 6).

On May 23, 1994, the Trustee, Barbara A. Edwards, Esq., filed a report of no assets and order.

On September 19, 1994, the Bank filed a complaint against the Debtor ("Bank's Com-

plaint"), which was assigned adversary proceeding number 94–2574 ("Bank's Adversary Action"). The Bank's Complaint has five counts that all deal with the Debtor's IRA accounts with Smith Barney Shearson of approximately $1,127,000 [1] (the "SBS IRA"). The counts allege: First Count—the Debtor's conduct in transferring funds to the SBS IRA within one year prior to the filing of his bankruptcy petition constitutes fraudulent transfers under § 548(a)(1); Second Count—the Debtor's conduct referred to in the First Count constitute fraudulent transfers under § 548(a)(2); Third Count—the Debtor's conduct referred to in the First Count constitute fraudulent transfers under *N.J.S.A.* 25:2–25(a); Fourth Count—the Debtor's conduct referred to in the First Count constitute fraudulent transfers under *N.J.S.A.* 25:2–

---

**1.** On March 7, 1994, the date that the Chapter 7 petition was filed, the IRA had approximately $1,127,000.00. As of February 1, 1995, it had approximately $988,000.00. *See* Certification of Jack I. Schwartz, filed February 27, 1995 at ¶ 8. The Debtor states that the difference between the two figures results from withdrawals by the Debtor of approximately $65,000.00 and a de-

crease in the value of the securities held in the IRA. *Id.* In that same certification, the Debtor states that his birth date is August 2, 1935, so that he was not entitled to invade his IRA without penalty at the time the petition was filed as he turned 59½ years of age after the petition was filed. *Id.* at ¶ 9.

25(b); Fifth Count—the Debtor's conduct referred to in the First Count constitute fraudulent transfers under *N.J.S.A.* 25:2–27(a).

On November 4, 1994, the Chapter 7 Trustee filed a motion to intervene in the Bank's Adversary Action. On December 6, 1994, an order was entered that joined Barbara Edwards, the Chapter 7 Trustee, as a party plaintiff in the Bank's Adversary Action.

On January 17, 1995, the Debtor filed a notice of amendment to the Petition. The amendments detailed by the Debtor were: (i) as to Schedule B, including certain interests in stocks that were not put in petition; (ii) as to Schedule F, listing a potential claim relating to certain transfers of stock. On January 19, 1995, an order was entered allowing the Debtor to amend Schedule F's list of creditors.

On January 17, 1995, the Bank filed the Exemption Motion. The Bank filed a memorandum of law in support ("Bank's Brief") of their motion to have the Debtor's listing of the SBS IRA as exempt declared invalid. In the Bank's Brief, the Bank contends that: (i) the Debtor's claimed exemption of the SBS IRA under New Jersey state law is invalid because state law is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and (ii) ERISA's anti-assignment provision is not a type of "other" federal law under which the Debtor can exempt his IRA accounts under § 522(b)(2)(A). The Chapter 7 Trustee has joined the Bank in opposition to the said exemption.

On February 14, 1995, the Debtor filed a memorandum of law in opposition to the Exemption Motion ("Debtor's Brief"). In the Debtor's Brief, the Debtor contends that the IRA is exempt because § 522 allows a debtor to choose state law exemptions and the provisions of *N.J.S.A.* 25:2–1(b) are not preempted by ERISA. The Debtor argues against preemption by submitting that *N.J.S.A.* 25:2–1(b) is saved from preemption pursuant to the ERISA savings clause, and alternatively, the portion of *N.J.S.A.* 25:2–1(b) applicable to IRAs is severable from any asserted void portion of *N.J.S.A.* 25:2–1(b) relating to ERISA-qualified plans.

On February 17, 1995, the Trustee filed a complaint against the Debtor, Susan ·A. Schwartz (Debtor's wife), Smith Barney Shearson, Valley National Bank and Hudson United Bank ("Trustee's Complaint"), which was assigned adversary proceeding number 95–2175 ("Trustee's Adversary Action"). The Trustee's Complaint seeks recovery of certain property of the estate, a declaration of the Court that the SBS IRA is property of the chapter 7 estate, injunctions and an accounting. As to the SBS IRA, the Trustee's Complaint seeks to: (i) recover payments made from the SBS IRA, *see* Count I of Trustee's Complaint; (ii) have the estate gain the current balance of the SBS IRA, *see* Counts I and III of Trustee's Complaint; and (iii) enjoin the named defendants from affecting the SBS IRA and other property, *see* Count IV of Trustee's Complaint.

On March 6, 1995, the Bank filed a letter brief in reply ("Bank's Reply") to the Debtor's Brief. The Bank asserts that this is a case of first impression in the Third Circuit and that many courts in various circuits have held that ERISA preempts similar state statutes. Additionally, the Bank asserts that the Debtor, in effect, conceded on the issue that ERISA provisions which prohibit assignment of benefits does *not* constitute an "other" federal law exemption under § 522(b)(2)(A) because, according to the Bank, the issue was not addressed in Debtor's Brief. *See* Bank's Reply, at 5.

On March 8, 1995, the Debtor filed a response ("Debtor's Response") to the Bank's Reply. The Debtor argues that every Circuit Court that has determined the issue has held the exemption valid and enforceable. Additionally, the Debtor refutes the issue that the Debtor did not actually claim the exemption, which was raised in oral argument, by asserting that the exemption was claimed and that an exemption may be claimed at anytime before the case is closed. *See* Debtor's Response, at 9 n. 1.

On March 14, 1995, the Debtor filed a "Notice Of Amendment To Voluntary Petition". The Debtor's *notice of amendment* provides:

**JACK I. SCHWARTZ** hereby gives notice pursuant to Bankruptcy Rule 1009

that he hereby amends his Schedules as follows:

Schedule C of his Voluntary Petition under Chapter 7 is amended as follows:

Debtor elects the exemptions to which debtor is entitled under: 11 U.S.C. § 522(b)(2): Exemptions available under applicable nonbankruptcy federal laws, state or local law. Specifically, but not by way of limitation, N.J.S.A. 25:2–1(b).

*See* Debtor's Notice Of Amendment To Petition dated filed March 14, 1995 ("Debtor's 3/14/95 Amendment").

On March 14, 1995, the Court held a hearing on the Exemption Motion and reserved decision. At the hearing, the Court instructed the parties to submit additional letters to comment on how the decision of this Court in *In re Lamb*, 179 B.R. 419 (Bankr.D.N.J.1994) (holding that debtor's IRA was exempt under N.J.S.A. 25:2–1(b)) affects their positions.

On March 31, 1995, the Bank filed a supplemental letter brief ("Bank's Supp. Brief") commenting on the Court's recent decision in *Lamb*. The Bank argues that the *Lamb* decision is not applicable to the Exemption Motion because the trustee in the *Lamb* case did not raise the preemption issue so "the Court only decided that the New Jersey statue would allow the [d]ebtor to exempt his IRA." *See* Bank's Supp.Brief, at 1. Additionally, the Bank comments that the Debtor has not provided the Court with information regarding whether his IRA was validly created under federal law as a "rollover" from another pension fund. *Id.* at 1–2. The Bank argues that "since the Debtor has not submitted such information ... the Debtor has filed to show that its IRA is a 'qualifying trust' as that term is defined in the subject New Jersey statute." *Id.* at 2 (citing *N.J.S.A.* 25:2–1).

On April 4, 1995, the Debtor filed a supplemental letter brief ("Debtor's Supp. Brief") commenting on the *Lamb* case. The Debtor comments: "Frankly, we agree with the *Lamb* decision." *See* Debtor's Supp.Brief, at 2.

On May 5, 1995, an Information For Notice Of Settlement Of Controversy was submitted to creditors by the Chapter 7 trustee addressing the Debtor's SBS IRA, which arguably rendered the Exemption Motion moot.

On May 11, 1995, the Debtor filed a certification of Jack I. Schwartz dated April 18, 1995 ("Debtor's Cert.") and a certification of Frank L. Stifleman ("Stifleman") dated April 13, 1995 ("Stifleman's Cert."). The Debtor's Cert. provides in pertinent part:

2. At all relevant times, I was a principal of Mortgage Brokerage Services which had both a qualified pension plan and a qualified profit sharing plan.

3. I was a beneficiary of both plans.

4. When Mortgage Brokerage Services terminated, so did the plans. I was advised in or about 1982 or 1983, when both plans were still qualified, that in order to suffer no tax penalties, I was required to "roll over" the monies from the profits sharing plan and the pension plan into an IRA. I did so in or about 1983. When the rollover occurred, the plans were both qualified and there was no "gap".

5. Unfortunately, since the events occurred more than ten years ago, I cannot locate the records of the rollover. However, I do know that they were rolled over into my IRA's.

*See* Debtor's Cert., at ¶¶ 2–5.

Stifleman certifies that: (i) "[a]t all relevant times, [he] was an attorney in charge of the Profit Sharing Plan and the Pension Plan of Mortgage Brokerage Services," *see* Stifleman's Cert., at ¶ 3; (ii) the Profit Sharing Plan and Pension Plan of Mortgage Brokerage Services "remained qualified until its demise," *id.* at ¶ 4G and ¶ 6; (iii) "[t]o the best of [his] recollection, the two qualified plans were terminated and [he] advised [the Debtor] to roll his benefits into an IRA," *id.* at ¶ 7; and (iv) "[u]nfortunately, [he] do[es] not have all the files since they are destroyed periodically," *id.* at ¶ 8.

Subsequently, a dispute ensued regarding the aforementioned notice of settlement of Adversary Pro. Nos. 94–2574 and 95–2175 presented to creditors by the Chapter 7 trustee. *See* Bank's Objection To Information Of Settlement dated May 9, 1995. This Court declined to approve the settlement as

noticed by the Trustee. The Court heard further argument on the Exemption Motion on June 12, 1995. The Court today renders its opinion on the Exemption Motion.[2]

### DISCUSSION

### I. Timeliness Of Objections To Exemption

Fed.R.Bankr.P. 4003(b) provides:

**(b) OBJECTIONS TO CLAIM OF EXEMPTIONS.** The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list or supplemental schedules unless, within such period, further time is granted by the court. Copies of the objections shall be delivered or mailed to the trustee sand the person filing the list and the attorney for such person.

Fed.R.Bankr.P. 4003(b).

■ A threshold matter the Court must consider is the timeliness of the objection to the Debtor's SBS IRA exemption. During oral argument on June 12, 1995, the Debtor contended that the objections were untimely.

The Court notes that this argument must be analyzed in light of the Supreme Court's decision in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). In *Taylor*, the Supreme Court held that if a trustee does not object to a debtor's exemptions within the time specified by Rule 4003(b), i.e. 30 days from the conclusion of the First Meeting Of Creditors, the validity of such exemptions could not be challenged. 503 U.S. at 642, 112 S.Ct. at 1647–48. Courts have consistently applied the *Taylor* holding that Rule 4003(b) is to be construed literally. *See, e.g., In re Kazi*, 985 F.2d 318 (7th Cir.1993) (untimely objection to exemption would not be allowed); *In re Riso*, 170 B.R. 484 (Bankr.D.N.H.1994) (same); *In re Hickman*, 157 B.R. 336 (Bankr.N.D.Ohio 1993) (same).

Turning to the case at bar, the § 341 Meeting was held on April 14, 1994. *See* § 341 Meeting Minutes. Within the thirty days following the § 341 Meeting, there were no formal objections filed regarding the Debtor's exemptions. Although this could be viewed as barring subsequent objections, the instant case is distinguishable from the *Taylor* case because of the ambiguities present in the Debtor's exemption schedule and the fact that the Debtor amended said schedule to resolve the ambiguities.

In the Petition, the Debtor failed to indicate whether he was claiming exemptions under § 522(d)(1) or 522(d)(2), even though the Petition required him to do so. *See* Petition, Schedule C—Property Claimed As Exempt. As to the SBS IRA, the Debtor appears to have misnamed it since he listed an "IRA with Smith Barry." *Id.* Additionally, and more importantly, the Debtor did not provide the specific law which his SBS IRA exemption was based, even though the Petition requests that a debtor "specify law providing each exemption." *Id.* Thus, the Debtor's Petition pertaining to the SBS IRA is ambiguous and the Court notes that courts have consistently held that ambiguities in the schedules will be construed against the debtor. *See, e.g., In re Hyman*, 123 B.R. 342 (Bankr. 9th Cir.1991), *aff'd*, 967 F.2d 1316, 1319 n. 6 (9th Cir.1992) (holding that any ambiguities in a debtor's schedules are construes against the debtor, court concluded that debtor's exemption was limited to amount stated by debtor as exempt value rather than full value of homestead); *Addison v. Reavis*, 158 B.R. 53, 59 (E.D.Va.1993) (same, except debtors' exemptions for interests in partnership were limited to value debtors listed), *aff'd without op. sub. nom., Ansslie v. Grablowsky*, 32 F.3d 562 (4th Cir. 1994), *reported in full*, 1994 WL 410995, 1994 U.S.App. LEXIS 20701 (4th Cir.1994). Thus, the 30–day period to object did not run until the Debtor clarified his exemption schedule

---

**2.** The Court is aware that a subsequent motion to enforce a purported settlement between the Trustee and the Debtor of Adversary Pro. Nos. 94–2574 and 95–2174 was filed by the Trustee on June 26, 1995. That purported settlement relates to the distribution of the SBS IRA. A hearing on that motion is presently scheduled for August 15, 1995. By issuing the instant decision, the Court does not rule upon whether an enforceable settlement pertaining to the SBS IRA was reached between the said parties.

as it relates to the SBS IRA.[3] *See In re Zimmer,* 154 B.R. 705, 709 (Bankr.S.D.Ohio 1993) (stating "where a debtor's schedules are too ambiguous to ascertain exactly what property is claimed as exempt, the strict time constraints of *Taylor* are not applicable until the schedules have been clarified or the trustee is otherwise put on notice of the precise nature of the debtor's claim of exemption").

On March 14, 1995, the Debtor amended his exemption schedule by filing an amendment which indicated that he was electing the § 522(b)(2) exemptions and specifically, *N.J.S.A.* 25:2–1(b). Prior to said amendment, the Bank filed an objection to the Debtor's claim that his SBS IRA is exempt. Thus, the Bank's objection was timely.[4]

## II. Preemption And "Qualifying Trust" Arguments

■ Section 522[5] permits a debtor to exempt certain property from the bankruptcy estate and authorizes states to specify exempt property. 11 U.S.C. § 522. Section

522 requires the debtor to choose between subparagraphs (b)(1) and (b)(2), not to choose both or some of both. Thus, the debtor may exempt property under § 522(d), so long as the resident state has not opted out. As New Jersey is not an "opt-out" state, a debtor in this state may elect either the state exemptions or the federal exemptions under § 522(d). The Debtor has elected the exemptions under § 522(b)(2), which entitles him to the exemptions available under applicable nonbankruptcy federal laws, state or local law.[6] *See* Debtor's 3/14/95 Amendment.

The remaining issues before the Court are the Bank's contentions that:

(i) *N.J.S.A.* 25:2–1(b) is preempted by ERISA and that ERISA's anti-assignment provision is not a type of "other federal law" under which the Debtor can exempt his IRA accounts; and

(ii) if the statute is not preempted, it is inapplicable because the SBS IRA does not classify as a "qualifying trust."

---

3. The Court notes that an argument may be made that if the trustee or creditors have knowledge of a possible objection to claimed exemptions, the 30–day period to object may start to run, even if it might not otherwise because of ambiguity in the schedules. *See In re Gilbert v. Zimmer,* 154 B.R. 705, 709 (Bankr.S.D.Ohio 1993). In the instant case, the Debtor himself filed an amendment to his exemption schedule, thus affording the trustee and Bank under Rule 4003(b) an additional 30 days from the date of the filing of the amendment to file any objection.

4. The Court notes that the Debtor's amendment gave the trustee and creditors a 30–day extension to object to the exemption amended in the schedule pursuant to Fed.R.Bankr.P. 4003(b). *See In re Woodson,* 839 F.2d 610, 614 (9th Cir.1988) (holding creditor's time to object under Fed. R.Bankr.P. 4003(b) did not run from § 341 meeting but from the date the debtor amended his schedules to list the exemption in question); *but see In re Payton,* 73 B.R. 31, 33 (Bankr.W.D.Tex. 1987) (objection to exemption that was not subject of amendment deemed untimely since the extension of time to object only relates to those exemptions that are amended); *Matter of Gullickson,* 39 B.R. 922, 923 (Bankr.D.Wis.1984) (same).

5. Section 522(b) provides:
   (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either

paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—
   (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize, or in the alternative, (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; and
   (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

6. Because the Debtor has not selected the federal exemptions, the Court need not address the SBS IRA's exempt status under § 522(d)(10)(E), which exempts a qualifying plan holder's present right to payment. *See In re Clark,* 711 F.2d 21 (3d Cir.1983) (holding that present right to payment under Keough plan is exempt but that the exemption of future payments is absent from the statute).

The Court does not need to discuss the issue of whether or not the SBS IRA is property of the estate because the Debtor has not argued that his IRA accounts are excluded by § 541(c)(2). As a result, the Court will also not reach the issue of whether *N.J.S.A.* 25:2–1(b) is preempted by the Bankruptcy Code. *See In re William J. Van Nostrand,* 183 B.R. 82, 85–86 (Bankr.D.N.J. 1995) (Gindin, J.) (expressing that the Act would be preempted by the Bankruptcy Code if the court had concluded that the Act was an exclusion statute). The Court will note, however, that in the *Lamb* decision this Court held that the Act should be interpreted as an exemption statute and so determined that the subject IRA was property of the estate under 11 U.S.C. § 541(a) but that the debtor was entitled to exempt the IRA under *N.J.S.A.* § 25:2–1 *et seq.* 179 B.R. at 425–28; *see also, Van Nostrand,* 183 B.R. at 85–86 (agreeing with *Lamb* that the Act should be interpreted as an exemption statute).

*(i) N.J.S.A. 25:2–1(b) May Be Utilized To Exempt A Qualified Trust*

▮ *N.J.S.A.* 25:2–1 provides:

Conveyances of personal property in trust for use of persons making them void as to creditors. a. Except as provided in subsection b. of this section, every deed of gift and every conveyance, transfer and assignment of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against creditors.

b. Notwithstanding the provisions of any other law to the contrary, any property held in a qualifying trust and any distributions from a qualifying trust, regardless of the distribution plan elected for the qualifying trust, shall be exempt from all claims of creditors and shall be excluded from an estate in bankruptcy, except that:

1) no exemption shall be allowed for any preferences for fraudulent conveyances made in violation of the "Uniform Fraudulent Transfer Act," R.S. 25:2–20 et seq., or any other State or federal law; and

2) no qualifying trust shall be exempt from the claims under any order for child support or spousal support or of an alternate payee under a qualified domestic relations order. However, the interest of any alternate payee under a qualified domestic relations order is exempt from all claims of any creditor of the alternate payee. As used in this paragraph, the terms "alternate payee" and "qualified domestic relations order" have the meanings ascribed to them in section 414(p) of the federal Internal Revenue Code of 1986 (26 U.S.C. § 414(p)).

For purposes of this section, a "qualifying trust" means a trust created or qualified and maintained pursuant to federal law, including, but not limited to, section 401, 403, 408 or section 409 of the federal Internal Revenue Code of 1986 (26 U.S.C. § 401, 403, 408 or 409).

*N.J.S.A.* 25:2–1(b) (West Supp.1995).

The Debtor has asserted that the SBS IRA qualifies under Internal Revenue Code § 408.[7] If so, the Debtor asserts that the

---

7. The Internal Revenue Service provides for the creation of tax exempt Individual Retirement Accounts, also known as IRAs:

§ 408. **Individual retirement accounts.**
(a) **Individual retirement account.** For purposes of this section, the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements:
(1) Except in the case of a rollover contribution described in subsection (d)(3) in section 402(c), 403(a)(4), or 403(b)(8), no contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year in excess of $2,000 on behalf of any individual.

2) The trustee is a bank (as defined in subsection (n)), or such other person who demonstrates to the satisfaction of the Secretary that the manner in which such other person will administer the trust will be consistent with the requirements of this section.
3) No part of the trust funds will be invested in life insurance contracts.
4) The interest of an individual in the balance in his account is nonforfeitable.
5) The assets of the trust will not be commingled with other property except in a common trust fund or common investment fund.
6) Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death benefit requirements of section 401(a) shall apply to

SBS IRA is a "qualifying trust" under *N.J.S.A.* 25:2–1(b) and may be exempted. As mentioned earlier, the Bank argues that ERISA should preempt *N.J.S.A.* 25:2–1(b).

In determining whether *N.J.S.A.* 25:2–1(b) is invalid in its entirety because of ERISA, the Court will begin its analysis by noting the applicable ERISA provisions.

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. Section 514 also provides the following savings clause:

> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

ERISA 514(d), 29 U.S.C. § 1144(d).

The Bank here argues that any state law which makes reference to ERISA plans are preempted by § 514(a). *See Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988). (noting that ERISA § 514(a) preempts any and all state laws insofar as they may now or hereafter relate to any employee benefit plan covered by the statute, and holding that Georgia statute barring the garnishment of funds due to participants of ERISA employee benefit plans was such a state law).

The Debtor has argued that *N.J.S.A.* 25:2–1(b) is not preempted because the state law exemptions, as part of the enforcement of the Bankruptcy Code, is excepted from preemption under ERISA's savings clause. In deciding this issue, the Court notes that there have been two reported cases addressing the relationship of *N.J.S.A.* 25:2–1(b) and the Bankruptcy Code. *See Lamb* and *Van Nostrand.* However, in both cases, the parties involved did not raise the issue of preemption of *N.J.S.A.* 25:2–1(b) by ERISA and accordingly, the courts did not address that issue.

the distribution of the entire interest of an individual for whose benefit the trust is maintained.

Thus, in deciding the issue, this Court will look to authorities outside the Third Circuit.

In *In re Printy,* 171 B.R. 448 (Bankr. D.Mass.1994), the court was presented with the same issue facing this Court except that the Massachusetts court was deciding whether ERISA preempted a Massachusetts statute. In analyzing the preemption matter, the *Printy* court stated:

> The majority of circuits agree that ERISA does not preempt state exemption statutes relating to retirement benefits for the reason that state law exemptions are necessary to the enforcement of the Bankruptcy Code because of the power conferred by Congress on the states to enact exemptions. *See In re Schlein,* 8 F.3d 745, 753–54 (11th Cir.1993) (Florida's exemption statute for employee benefit plans was not preempted by ERISA because the state statute was enacted pursuant to the express authority given the states under the Bankruptcy Code, and thus is excepted from preemption under ERISA's savings clause); *In re Vickers,* 954 F.2d 1426, 1429 (8th Cir.1992) (state law provides an exemption for pension plan benefits, which law was enacted pursuant to the authority given states by the Bankruptcy Code, and Congress determined that ERISA shall not impair or supersede any other federal statute), *cert. dism. by,* —— U.S. ——, 113 S.Ct. 4, 120 L.Ed.2d 933 (1992); *Matter of Dyke,* 943 F.2d 1435, 1450 (5th Cir.1991) (the Bankruptcy Code is a federal law that ERISA cannot disturb even if the claimed exemption is an ERISA-qualified pension plan). A minority of courts has ruled that ERISA preempts state statues relating to retirement benefits on the ground that the state exemption provisions do not impair section 522 of the Bankruptcy Code. *See In re Hennessey,* 135 B.R. 711 (Bankr. D.Mass.1992) (ERISA preempts the Massachusetts statute allowing debtors to exempt profit sharing plans; however, the debtor may claim the profit sharing plan exempt under ERISA); *In re Komet,* 104 B.R. 799, 805 (Bankr.W.D.Tex.1989) (Texas statute exempting ERISA profit sharing

26 U.S.C. § 408(a).

and pension plans is preempted by ERISA because it interferes with the federal regulatory scheme).

*Printy,* 171 B.R. at 450.

The majority of circuit courts that have decided the preemption issue have found that ERISA does not preempt state exemption statues relating to retirement benefits. As is evidenced by the *Printy* passage, the three circuits (Eleventh, Eighth, Fifth) that have ruled on ERISA preemption in this context have decided the issue in favor of state exemptions.[8] *See Schlein,* 8 F.3d at 753–54 (11th Cir.); *Vickers,* 954 F.2d at 1429 (8th Cir.); *Dyke,* 943 F.2d at 1450 (5th Cir.). *See also Matter of Volpe,* 943 F.2d 1451, 1453 (5th Cir.1991).

Similar to the *Printy* court, this Court is persuaded by the reasoning of the majority that pursuant to the savings clause of ERISA, *N.J.S.A.* 25:2–1(b) is not preempted by ERISA. *See Printy,* 171 B.R. at 450. The Court agrees with the Fifth Circuit's reasoning in *Dyke* that:

> If this Court were to interpret ERISA to preempt provisions of the state exemption schemes, the state would be unable to set enforceable exemption levels on retirement benefits. This would relegate many debtors to a federal exemption scheme which might be inappropriate to the locale. As a consequence, the enforcement scheme contemplated in the Bankruptcy Code would be modified and impaired.

943 F.2d at 1449. Moreover, the Court agrees with the following analysis by the Eleventh Circuit in the *Schlein* decision:

> A straightforward preemption analysis focusing solely on the force and effect of the ERISA preemption provision as it relates to a state exemption scheme ignores the Bankruptcy Code. Just as Congress is empowered to reserve for itself an area for

exclusive regulation and control, as it has certainly done for pension and welfare benefit plans, it may also authorize states to exercise final authority without regard to other federal legislation. I believe this has been done in the Bankruptcy Code.

\*　　\*　　\*　　\*　　\*　　\*

> The Bankruptcy Code not only authorizes states to fashion exemptions in bankruptcy as they see fit, but provides therein a model example of an exemption that the majority would prohibit ... Disallowing a valid state exemption in bankruptcy would impair the Bankruptcy Code no less than invalidating state civil right grievance mechanisms impairs Title VII.

8 F.3d at 753 (quoting *Pitrat,* 947 F.2d at 430, 432 (Sneed, J., dissenting)).

For these reasons, this Court rules that *N.J.S.A.* 25:2–1(b) is not preempted by ERISA.

▇▇ Similar to the *Printy* case, this Court also notes that there are alternative grounds for finding that ERISA preemption is not appropriate in the instant case. First, "even if the Court were to rule that ERISA had a preemptive effect on *N.J.S.A.* 25:2–1(b), the preemption would not apply to IRA accounts." *Printy,* 171 B.R. at 450. As explained by the *Printy* court,

> An IRA account is not an ERISA qualified employee benefit plan. It is a self-settled account established under the Internal Revenue Code. *See* 26 U.S.C. § 408(a). An IRA account is not established or maintained by an employer or employee organization and is not covered by ERISA. *See* 29 U.S.C. § 1002(2)(A); 29 C.F.R. 2510.3–2(d)(1).[9] Accordingly, an IRA account is outside the preemptive scope of ERISA.

171 B.R. at 450 (citations omitted). As a result, ERISA does not preempt *N.J.S.A.*

---

8. The Court is aware that the Ninth Circuit held that ERISA preempts an Arizona pension plan but notes that the Ninth Circuit later withdrew the opinion. *Pitrat v. Garlikov,* 947 F.2d 419 (9th Cir.1991), *op. withdrawn,* 992 F.2d 224 (9th Cir. 1993).

9. 29 C.F.R. 2510.3–2(d)(1) provides:

(d) Individual Retirement Accounts

(d)(1) For purposes of Title I of the Act [ERISA] and this chapter, the terms "employee pension benefit plan" and "pension plan" shall not include an individual retirement account, described in section 408(a) of the Internal Revenue Code ("Code"), an individual retirement annuity described in section 408(b) of the Code and an individual retirement bond described in section 409 of the Code.

29 C.F.R. 2510.3–2(d)(1) (emphasis added).

25:2–1(b) when, as in the instant case, IRA accounts are the particular plans in question.

This result is possible because New Jersey allows a statute to be severed. In other words, *N.J.S.A.* 25:2–1(b) as it pertains to IRA accounts may be severed from the portion relating to ERISA plans so that the portion relating to IRA accounts may remain in force. *See Printy,* 171 B.R. at 450–51 (Massachusetts statute may be severed). The applicable New Jersey provision is *N.J.S.A.* 1:1–10, entitled "Partial unconstitutionality," which provides:

> If any title, subtitle, chapter, article or section of the Revised Statutes, or of any statute or any provision thereof, shall be declared to be unconstitutional, invalid or inoperative, in whole or in part, by a court of competent jurisdiction, such title, subtitle, chapter, article, section or provision shall, to the extent that it is not unconstitutional, invalid or inoperative, be enforced and effectuated, and no such determination shall be deemed to invalidate or make ineffectual the remaining titles, subtitles, chapters, articles, sections or provisions.

*N.J.S.A.* 1:1–10 (West 1992). Thus, even if the Court were to find that ERISA had a preemptive effect on *N.J.S.A.* 25:2–1(b), this Court could limit the preemption to ERISA plans by employing *N.J.S.A.* 1:1–10.

### (ii) Qualifying Trust

■ As noted earlier, a "qualifying trust" means a "trust created or qualified and maintained pursuant to federal law, including, but not limited to, section 401, 403, 408 or section 409 of the federal Internal Revenue Code of 1986 (26 U.S.C. § 401, 403, 408 or 409)." *N.J.S.A.* 25:2–1(b). Thus, an IRA established under 26 U.S.C. § 408 qualifies and is exemptible from a debtor's estate under *N.J.S.A.* 25:2–1(b). *See, e.g. Lamb,* 179 B.R. at 427–29; *Van Nostrand,* 183 B.R. at 87.

■ In the instant case, the Bank has asserted that the Debtor must establish that the SBS IRA is a "qualifying trust" by showing it was validly established under federal law. The Debtor has submitted certifications to accomplish such a showing. In reviewing the Debtor's Cert. and Stifleman's Cert., the Court is satisfied that the SBS IRA was validly established as an IRA under 26 U.S.C. § 408 and so exemptible under *N.J.S.A.* 25:2–1(b).

The New Jersey statute exempts the entire qualifying trust and any distributions from that trust. The only limitations on this exemption are if the trust is a preference or a fraudulent conveyance, if it violates any federal or state law, or if it is subject to a support obligation. There is no requirement, under *N.J.S.A.* 25:2–1 that the IRA originate as a rollover from an ERISA pension plan or that the IRA be reasonably necessary to the support of the debtor. *See Lamb,* 179 B.R. at 427.

It is critical to note here that counsel for the Bank conceded at oral argument on June 12, 1995 that discovery conducted by the Bank, in connection with the Bank's Adversary Action, had uncovered no evidence of fraudulent transfers. Accordingly, that limitation on the operation of the exemption under *N.J.S.A.* 25:2–1(b) is not applicable here.

Accordingly, this Court holds that the Debtor's SBS IRA is exempt pursuant to *N.J.S.A.* 25:2–1(b) and 11 U.S.C. § 522(b)(2).[10]

An Order shall be submitted in accordance with this Opinion.

---

**10.** As noted above, notwithstanding the Court's ruling today that the IRA is exempt, the Court does not here rule on the issue of whether the trustee may, in connection with her pending mo-tion, enforce an alleged prior settlement pertaining to the SBS IRA as between the Trustee and the Debtor.